Naqvi v. Fisher                          CV-94-335-M    12/29/95 P
                    UNITED STATES DISTRICT COURT FOR THE
                          DISTRICT OF NEW HAMPSHIRE


Shirley A. Naqvi,
       Appellant,

       v.                                       Civil No. 94-335-M

Richard F. Fisher,
       Appellee and Debtor.
_____

Geraldine L. Karonis, Esq.;
Lawrence P. Sumski, Esq.; and
Richard Erricola,
       Trustees.


                            O R D E R


       Shirley Naqvi, the former wife of appellee Richard Fisher,

appeals a ruling by the United States Bankruptcy Court for the

District of New Hampshire allowing Fisher to avoid a lien she

held on Fisher's property.  For the reasons discussed below, the

bankruptcy court's determination that Naqvi's lien is avoidable

is reversed.


I.     FACTUAL AND PROCEDURAL BACKGROUND

The material facts are not disputed. Shirley Naqvi[1] and Richard Fisher were divorced in December of 1989, pursuant to a decree entered by the New Hampshire Superior Court. The divorce decree also divided the parties' marital property, awarding Fisher the family home[2] located on Chadwick Hill Road in Boscawen, New Hampshire, and awarding Naqvi $91,250. While the decree required Fisher to pay Naqvi the full sum within 90 days, it did not secure that payment by placing a judicial lien on Fisher's real or personal property.

Some five months after entry of the decree, Fisher still had not paid Naqvi the sum owed. Naqvi filed appropriate motions to enforce the terms of the decree and, on June 29, 1990, the parties entered into an agreement resolving their dispute and establishing terms under which Fisher would fulfill his original obligations under the divorce decree as well as his newly created obligations. According to the terms of that agreement, Fisher

---

[1] At all times prior to 1990 and relevant to these proceedings, Ms. Naqvi's legal name was Shirley Fisher. For purposes of clarity, this order will refer to her by her current surname.

[2] Prior to the divorce, Fisher held sole legal title to the marital home. Therefore, the complex issues identified and resolved in Farrey v. Sanderfoot, 500 U.S. 291 (1991), relative to one spouse's succession to the other's undivided one-half interest in jointly owned real estate, are not present here.

2

was to pay Naqvi an increased sum, $125,000, on or before October 30, 1990, and he was further obligated to make good faith efforts to obtain financing within 30 days of the agreement in order to fund payment of his obligation to Naqvi. Fisher also voluntarily agreed to secure his revised obligation to Naqvi by granting her a lien in the amount of $125,000 on all of his assets, including the Chadwick Hill real estate. In short, in exchange for Naqvi dropping her enforcement motions and giving Fisher more time to satisfy his original payment obligation, Fisher agreed to pay an increased amount and secure that obligation by granting Naqvi a lien on his assets. The agreement was reduced to writing, in the form of a stipulation, and that stipulation was recorded at the Merrimack County Registry of Deeds. The stipulation was also filed in the Superior Court, which incorporated the stipulated agreement in a modified divorce decree.

After Fisher also failed to comply with the terms of the stipulated agreement,[3] Naqvi obtained (by Superior Court order dated March 14, 1991) an additional $250,000 lien on all of Fisher's real property. Naqvi promptly recorded that lien as well. Despite extensive efforts on Naqvi's part to collect the

---

[3] On November 11, 1990, Fisher was found by the Superior Court to be in contempt for failing to comply with the terms of the agreement, as incorporated in the modified decree.

3

sum owed her, including obtaining the services of a court-appointed trustee to sell Fisher's property, Fisher refused to honor his obligations. He filed for bankruptcy protection under Chapter 7 of the United States Bankruptcy Code just before his property was to be sold and the proceeds applied to Naqvi's claim.

Before the bankruptcy court, Fisher moved to avoid Naqvi's liens, to the extent of $30,000, under the provisions of 11 U.S.C. § 522(f)(1), which allow a bankrupt debtor to avoid the fixing of a judicial lien on the debtor's interest in property to the extent the lien impairs an exemption to which the debtor would have been entitled under 11 U.S.C. § 522(b). 11 U.S.C. § 522(f)(Supp. 1995). Section 522(b) incorporates the exemptions available under state law applicable at the time a debtor petitions for bankruptcy protection. Fisher claimed that Naqvi's liens impaired the homestead exemption to which he was entitled under N.H. Rev. Stat. Ann. § 480:4, and that he could, therefore, avoid her liens under section 522(f) to the full extent of that impairment. The property Fisher claimed as qualifying for the exemption was the Chadwick Hill home.[4]

---

[4] It is undisputed that the Chadwick Hill home qualifies as Fisher's homestead under New Hampshire law and that New Hampshire's exemptions apply. See N.H. Rev. Stat. Ann. § 480:1.

Prior to January 1, 1993, New Hampshire's homestead exemption was set at $5,000. Effective January 1, 1993, the exempt amount was increased to $30,000. N.H. Rev. Stat. Ann. § 480:1 (Supp. 1994). Fisher argued in the bankruptcy court that because he filed for bankruptcy protection after the statutory change became effective, he was entitled to invoke his homestead exemption and avoid Naqvi's liens to the extent of the new $30,000 limit. Naqvi countered that Fisher could avoid her liens, if at all, only to the extent of the $5,000 homestead exemption available at the time her liens were perfected.

The bankruptcy court ruled that Naqvi's liens were avoidable judicial liens and that Fisher could avoid those liens to the extent of $30,000, because the homestead amount in effect on the date Fisher filed his bankruptcy petition was controlling in the context of the federal bankruptcy proceeding. The bankruptcy court further ruled, in a thorough and well-reasoned opinion, that application of the new $30,000 homestead exemption to avoid judicial liens perfected prior to its effective date does not violate any provision of either the United States Constitution or New Hampshire Constitution.

The Chadwick Hill home has since been sold, and $30,000 of the proceeds have been placed in escrow pending final

determination of the respective rights of these parties to those proceeds.

## II.   STANDARD OF REVIEW

The relevant facts are not in dispute, and the question before the court is one of law.  In considering a bankruptcy appeal, the district court applies a de novo standard when reviewing the bankruptcy court's conclusions of law.  In re G.S.F. Corp., 938 F.2d 1467, 1474 (1st Cir. 1991); Robb v. Schindler, 142 B.R. 589, 590 (D. Mass. 1992).

## III. DISCUSSION

In order to set the stage for discussion of the precise issue at hand, a brief overview of applicable bankruptcy law is helpful.  Recently, in Owen v. Owen, 500 U.S. 305 (1991), the United States Supreme Court described the basic mechanism and purposes of lien avoidance under the bankruptcy code ("Code"). The following discussion of the relevant statutory framework is borrowed largely from that opinion.

A bankruptcy estate consists of all interests in property, both legal and equitable, held by a debtor at the time he or she files for bankruptcy protection, as well as those interests the

debtor recovers through lien avoidance provisions of the Code. Id. at 308. An "exemption" is an interest of the debtor that is withdrawn from the estate, and hence from the reach of creditors, for the benefit of the debtor. Section 522(b) of the Code describes property a debtor may exempt from the estate and allows states to "opt out" of those federal exemptions in favor of their own state-created exemptions. If a state does opt out of the federal exemptions, that state's debtors are limited to the exemptions provided by state law. Id. New Hampshire is an opt-out state. As mentioned, New Hampshire law provided for a homestead exemption in an amount set at $30,000 as of the filing of Fisher's petition. N.H. Rev. Stat. Ann. §§ 480:1,4.

Property exempted under section 522 is, as a rule, unavailable to satisfy pre-bankruptcy debts. 11 U.S.C. § 522(c). Property cannot be exempted from the estate, however, unless that property is first made part of the bankruptcy estate. Simply put, an interest that is not part of the bankruptcy estate cannot be exempted from it. Owen, 500 U.S. at 308. Thus, if a debtor holds only bare legal title to his or her house — if, for example, the house is subject to a mortgage or lien up to its full value and the debtor thus has no equitable interest in the house — only the debtor's legal title passes into the bankruptcy

7

estate. Id. The equitable interest in the house in such a case belongs to, and remains with, the mortgageholder or lienholder. And, since no equitable interest passes into the estate, no equitable interest can thereafter pass out to the debtor as an exempt interest in property. Id. at 309. The bare legal title that does pass to the estate can be the object of an exemption (e.g., homestead), but the property will remain subject to the equitable interest of the mortgageholder or lienholder. Id. (citing Long v. Bullard, 117 U.S. 617 (1886)). Therefore, only when the Code empowers a debtor to avoid liens can an interest originally not in the estate (but in the hands of a creditor) be passed to the estate, and subsequently, perhaps, to the debtor through application of an exemption. Id.

Here, the facts of record establish that Fisher held sole legal title to the Chadwick Hill home. His equity in the home and accompanying property at the time of his divorce from Naqvi was $74,000. The home was, however, subject to Naqvi's two liens of $125,000, and $250,000, respectively. The $125,000 lien, created by the agreement between them and recorded on July 11, 1990, being first in time, takes precedence over the later $250,000 lien (which was created by court order and recorded in March of 1991). Naqvi's first lien of $125,000, then, would

8

effectively eliminate all of Fisher's $74,000 of claimed equity in the Chadwick Hill home.  Given the relative values of the Chadwick Hill property and the attached liens, Fisher's interest did not extend beyond bare legal title to the home.  Therefore, absent some way to avoid Naqvi's liens, Fisher had no equitable interest in the home to exempt from the bankruptcy estate and insulate from the reach of his creditors.  So, in order to reserve to himself a portion of the value of the home, Fisher had to find a means to avoid Naqvi's $125,000 lien.

Fisher sought to avoid that lien by invoking the avoidance mechanism of 11 U.S.C. § 522(f), which provides:

> Notwithstanding any waiver of exemptions . . . the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, <u>if such lien is</u> . . . <u>a judicial lien</u> . . . .

11 U.S.C. § 522(f)(1) (emphasis added).  Section 522(f)(1) establishes several conditions necessary to lien avoidance.  Primary among those conditions, for purposes of this case, is that the debtor may not avoid a lien under section 522(f) unless that lien is a <u>judicial</u> lien.  11 U.S.C. § 522(f); <u>see also</u> <u>Boyd</u>

9

v. Robinson, 741 F.2d 1112 (8th Cir. 1984); In re Lowell, 20 B.R. 464, 466 (Bankr. D. Mass. 1982).

"Judicial liens" are specifically defined by the Code, and are to be distinguished from other types of liens. A "lien," generally, is a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). There are three types of liens recognized by the Code: (1) statutory liens; (2) security interests; and (3) judicial liens. These three categories are mutually exclusive and exhaustive, except for certain common law liens. Midlantic National Bank v. DeSeno, 17 F.3d 642, 645 (3d Cir. 1994) (citing S. Rep. No. 95-989 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5811). Only judicial liens and security interests are relevant to this case.[5] A judicial lien is a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). A "security interest," on the other hand, is "a lien created by an agreement." 11 U.S.C. § 101(51).

---

[5] A statutory lien is a "lien arising solely by force of a statute on specified circumstances or conditions . . . but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute." 11 U.S.C. § 101(53).

Accordingly, judicial liens are created by judicial action while security interests are created by consent of the parties. Klein v. Civale & Trovato, 29 F.3d 88, 94 (2d Cir. 1994). Congress intended that all liens created by agreement (sometimes called "consensual liens") be defined as security interests. H.R. Rep. No. 95-595, 95th Cong., 1st Sess. at 314 (1977); S. Rep. No. 95-989, 95th Cong., 2d Sess. at 26 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5813, 6271; In re Dunn, 109 B.R. 865, 867 (Bankr. N.D. Ind. 1988) ("security interest" should be construed liberally to include all liens created by agreement).

As evidenced by statutory definition, a judicial lien is distinguished from a security interest based upon the method by which the lien is created, and not based upon the method by which it is enforced. Wicks v. Wicks, 26 B.R. 769, 771 (Bankr. D. Minn. 1982). Thus, a lien created by an agreement between the parties remains a security interest "regardless of the method or means employed to make [the lien] enforceable either between the parties or against the world." Dunn, 109 B.R. at 871 (quoting Wicks, 26 B.R. at 771).

In determining whether the lien at issue here is in reality a judicial lien or a security interest, the court must focus on the method by which the lien was created, not the means by which

11

Naqvi sought to enforce it. In re Haynes, 157 B.R. 646 (Bankr. S.D. Ind. 1992) ("The key is . . . whether the lien arose by agreement or by a nonconsensual legal . . . process."). Proper characterization of Naqvi's liens requires the court to resolve pure questions of law, the facts being undisputed.

The bankruptcy court assumed that Naqvi's liens were of the judicial type, and were, therefore, avoidable liens.[6] The bankruptcy court also focused on the $250,000 lien that was indeed created by court order, and so was clearly a judicial lien under the Code. As noted above, however, the critical lien here is Naqvi's prior $125,000 lien, created by the post-decree agreement between Naqvi and Fisher and subsequently incorporated in the modified divorce decree by stipulation.

Precedent describing the distinction between judicial liens and security interests demonstrates that Naqvi's $125,000 lien is in reality a consensual lien or security interest and is,

---

[6] In the proceedings before the bankruptcy court, this case was consolidated with three others raising like issues related to which homestead exemption (the old $5,000 or the new $30,000) amount applied in calculating lien avoidance. Each of the other three cases involved liens that were clearly judicial in character. As a result of the consolidation and the parties' focus on the retroactivity issue, and because no party raised the point of distinction, the bankruptcy court's order did not specifically discuss the nature of Naqvi's $125,000 lien, but simply considered it, too, to be a judicial lien.

12

therefore, not avoidable under section 522(f).  To be sure, liens created by divorce decrees are often considered to be judicial liens because they arise from judicial action awarding a divorce, dividing marital property, and imposing liens to secure the fulfillment of obligations created by the court itself.  See, e.g., In re Buffington, 167 B.R. 833 (Bankr. E.D. Tex. 1994); McVay v. Parrish, 7 F.3d 76 (5th Cir. 1993), cert. denied, 114 S. Ct. 1373 (1994); Yerrington v. Yerrington, 144 B.R. 96 (Bankr. 9th Cir. 1992).  However, courts that have considered the nature of liens created by settlement agreements which are subsequently incorporated into divorce decrees by stipulation have held with near unanimity that such liens are consensual in nature and are, therefore, unavoidable security interests under the Code.  See, e.g., Dunn, 109 B.R. at 870-72; In re Shands, 57 B.R. 49, 51 (Bankr. D.S.C. 1985); In re Thomas, 32 B.R. 11, 12 (Bankr. D. Ore. 1983); Wicks, 26 B.R. at 771.  But see In re Wells, 139 B.R. 255, 256 (Bankr. D.N.M. 1992) (holding that lien created by settlement agreement and later incorporated into divorce decree was judicial lien because it "came into existence as the result of the commencement of a legal marital dissolution proceeding").

The particular circumstances leading to the agreement between Naqvi and Fisher in this case strongly support the legal

13

conclusion that Naqvi's $125,000 lien was a consensual security interest and not a judicial lien. By the time the parties agreed to the lien, the divorce court had already handed down its decree and order dividing their marital property. The completed divorce proceedings merely formed the backdrop against which subsequent bargaining between the two parties occurred. Thus, this case is easily distinguished from Wells, 139 B.R. at 256, in which the court found that a settlement agreement entered into after the institution of divorce proceedings but in anticipation of a pending decree was not sufficiently consensual to render it a security agreement under the Code.

Here, incorporation of the agreed upon lien into a modified divorce decree (by stipulation) merely served to establish yet another method by which the lien might be enforced by Naqvi (i.e. contempt) against Fisher, a method certainly justified given Fisher's repeated past failures to satisfy his financial obligations under the initial decree. Furthermore, the stipulated agreement embodies the essence of a bargained-for-exchange. Fisher, unable or unwilling to meet his obligations within the time allowed under the original decree, voluntarily sought and received from Naqvi an agreement giving him more time to pay. In return, Naqvi bargained for a larger sum, payment of

14

which was to be secured, this time, by Fisher's real property. The $125,000 lien granted by Fisher was not the result of any judicial compulsion whatsoever — he could have stood firm and suffered whatever enforcement options were available to Naqvi under the then existing final decree. For reasons entirely satisfactory to him, he chose to negotiate an agreement that included granting Naqvi a lien to which she was otherwise not entitled. The $125,000 lien is, therefore, a consensual lien or security interest under the Code, and it is not avoidable under 11 U.S.C. § 522(f).

Because the $125,000 lien qualifies as an unavoidable security interest, the question of the extent to which the lien impairs Fisher's homestead exemption under New Hampshire law, and the accompanying question of which homestead exemption amount ($5,000 or $30,000) applies, are both moot. Because Fisher had no equitable interest in the Chadwick Hill home, and could not create an equitable interest by avoiding Naqvi's consensual lien, he had no equitable interest to exempt from his bankruptcy estate. Fisher could, of course, exempt his bare legal title to the home; but such an exemption is useless to him because the property would remain subject to Naqvi's unavoidable $125,000 consensual lien. Therefore, Naqvi is entitled to the remaining

$30,000 in sale proceeds that has been placed in escrow pending the outcome of this appeal.

## IV.   CONCLUSION

For the reasons discussed, the decision of the bankruptcy court is reversed, and Naqvi is awarded $30,000 of the proceeds from the sale of the Chadwick Hill home held in escrow.   Judgment shall be entered accordingly.


SO ORDERED.


_____
Steven J. McAuliffe
United States District Judge

December 29, 1995

cc:   Arthur W. Perkins, Esq.
      R. Peter Shapiro, Esq.
      United States Trustee
      George Vannah
      Lawrence P. Sumski, Esq.
      Geraldine B. Karonis, Esq.
      Richard B. Erricola

16