In re Charles M. THOMPSON, Debtor.

Charles M. Thompson, Appellant,

v.

Bruce A. Unruh; Cheryl A. Semmler; Grace, Unruh & Pratt; and Royce E. Wallace, Trustee, Appellees.

BAP No. KS–99–010.
Bankruptcy No. 98–10568.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Nov. 15, 1999.

---

James T. McIntyre, Wichita, Kansas, for Appellant.

Jeffrey E. Goering (Jeffery C. Dahlgren with him on the brief) of Triplett, Woolf & Garretson, LLC, Wichita, Kansas, for Appellees.

Before McFEELEY, Chief Judge, BOULDEN, and CORNISH, Bankruptcy Judges.

## OPINION

CORNISH, Bankruptcy Judge.

This court has before it for review the order of the Bankruptcy Court denying confirmation of the debtor's chapter 13 plan, which provided for the avoidance of a lien on the debtor's homestead. For the reasons set forth below, we affirm the order of the Bankruptcy Court.

### BACKGROUND

Barbara Unruh, now deceased, was married to the debtor on March 21, 1992. Prior to the marriage, Ms. Unruh and the debtor entered into an antenuptial agreement. The agreement provided, in pertinent part, as follows:

> WHEREAS, both parties hereto are possessed of property in their own right and both parties desire that their marriage shall not in any way change the legal right of said parties to own and hold the property they now own as their separate property . . .;
>
> WHEREAS, both parties hereto desire that the marriage between the parties shall not in any way change or effect the rights of the heirs of law of either party to inherit his or her said separate property, and they further desire that they may each will and dispose of said separate property as they choose . . .;
>
> * * *
>
> SIXTH: Both parties hereto desire that tangible personal property derived from any income they earn through their regular employment, occupation or retirement after the date of their marriage which is commingled by the parties, shall be marital property; as well as any property the parties place in joint ownership including any residence purchased, however, if BARBARA should sell any real estate she currently owns for the purchase of new real estate to be placed in their joint names, she shall retain a lien on said property in the amount originally invested. If CHARLES shall make the payments on the newly purchased real estate from his sole funds, all principal contributions shall be used to reduce the principal contribution of BARBARA, until the contributions are equal. Any improvements paid for by CHARLES shall likewise be a reduction of principal of BARBARA if paid for from the sole funds of CHARLES. The parties contemplate that there shall be records maintained of contributions as made, and reduction of principal as made. Both parties desire that their respective contributions, and the contributions made by their employers to any retirement plan, company credit union, personal savings or checking accounts or certificates of deposit or IRA's remain the separate property of the owner or recipient thereof.

At the time of the marriage, Ms. Unruh owned free and clear real property at 6524 University, Wichita, Kansas. Ms. Unruh mortgaged the property for $50,000.00 for the purpose of making a down payment on the marital residence located at 10001 W. 12th, Wichita, Kansas. The parties agree that a portion of the mortgage proceeds was used for the down payment. The property located at 10001 W. 12th was held in the names of Barbara Unruh and Charles Thompson, as joint tenants with rights of survivorship. On September 3, 1994, Ms. Unruh died intestate.

On September 12, 1994, Bruce Unruh, Barbara's son, initiated probate proceedings in the District Court of Sedgwick County, Kansas, and on that same date, he was appointed Administrator of the estate of Barbara Unruh. On October 25, 1994, Bruce Unruh filed a Petition for Instructions seeking "instruction from [the probate] court concerning the effect of the antenuptial agreement on the administration of the estate." Appellant's Appendix, p. 16. On November 17, 1994, the debtor filed an Answer alleging that the antenuptial agreement was invalid "based on . misrepresentations contained in the agreement and by reason of his lack of

understanding of provisions of the agreement." *Id.* On December 9, 1994, the state court conducted an evidentiary hearing on the Petition for Instructions. The court ruled that the antenuptial agreement was clear and unambiguous and that the debtor failed to demonstrate that the agreement was invalid in any respect.

On October 10, 1995, Bruce Unruh filed a Petition to Settle Lien Amount. The district court issued a memorandum decision determining the amount of the lien to be $41,154.97. Thereafter, on September 26, 1996, the court entered a Journal Entry of Final Settlement which provided as follows:

"C. After payment of fees, expenses, and costs, all of the remaining personal property and Kansas real estate owned by decedent at the date of death, subject to any lawful disposition heretofore made and including, as heretofore ordered by the Court, the lien in favor of the estate in the amount of $41,154.97, covering the real property described as:

"Lot 1, Block 7, Westlink Village Eighth Addition, Sedgwick County, Kansas, more commonly known as 10001 West 12th, Wichita, Kansas 67212 is assigned as follows:

| "Name | Interest |
|---|---|
| "Bruce A. Unruh | One–Half |
| "Cheryl A. Semmler | One Half" |

The debtor filed a chapter 13 petition on February 12, 1998. The debtor currently resides at 10001 W. 12th, Wichita, Kansas and has declared this property as his exempt homestead in the bankruptcy proceeding. The debtor filed a chapter 13 plan in which he sought to avoid the lien of Bruce Unruh and Cheryl Semmler, pursuant to 11 U.S.C. § 522(f). Both creditors have objected. The Bankruptcy Court heard oral argument based on stipulated facts and denied avoidance of the lien and denied confirmation of the chapter 13 plan. This appeal followed.

## JURISDICTION

The Bankruptcy Appellate Panel has jurisdiction to hear appeals from "final judgments, orders, and decrees" of Bankruptcy Courts within the Tenth Circuit. 28 U.S.C. § 158; Fed. R. Bankr.P. 8001; 10th Cir. BAP L.R. 8001–1(a). On the face of this order, it appears to be interlocutory since the debtor was allowed fifteen (15) days within which to file an amended plan. However, in the opinion, the Bankruptcy Court effectively denied a motion to avoid lien, which is a final order. *Mohring v. Avco Fin. Servs. (In re Mohring)*, 1994 WL 192075, 24 F.3d 247 (9th Cir.1994) (table); *Expeditors Int'l v. Citicorp N. Am., Inc. (In re Colortran, Inc.)*, 218 B.R. 507, 510 (9th Cir. BAP 1997).

## STANDARD OF REVIEW

Findings of fact shall not be set aside unless clearly erroneous. Fed. R. Bankr.P. 8013; see *First Bank v. Reid (In re Reid)*, 757 F.2d 230, 233–34 (10th Cir. 1985). The clearly erroneous standard does not apply to the Bankruptcy Court's conclusions of law, which are reviewed de novo. *Pierce v. Underwood*, 487 U.S. 552, 558, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988). This matter was submitted to the Bankruptcy Court on stipulated facts; therefore, the facts are not at issue in this appeal. Thus, the Bankruptcy Court's conclusions will be reviewed de novo.

## DISCUSSION

The Bankruptcy Court noted that the debtor did not use the proper procedure in which to avoid a lien. *See* Fed. R. Bankr.P. 4003(d). Debtor attempted to avoid the lien through the plan confirmation process. Courts are split on the issue of the proper procedure to avoid a lien, and the Bankruptcy Court noted this split in its order. However, the Bankruptcy Court further noted that in the interest of judicial economy, it would rule on the lien avoidance issue. This court has jurisdiction since the denial of the motion to avoid lien is a final order.

## A. COLLATERAL ESTOPPEL PREVENTS RELITIGATION OF THE VALIDITY AND INTERPRETATION OF THE ANTENUPTIAL AGREEMENT

The Bankruptcy Court determined that collateral estoppel applied and found that the antenuptial agreement was valid, as had been determined by the probate court. "Under Kansas law, collateral estoppel may be invoked as a bar to litigation when the following is shown: (1) a prior judgment on the merits which determined the rights and liabilities of the parties on the issue, based upon ultimate facts as disclosed by the pleadings and judgment; (2) the parties are the same or in privity; and (3) the issue was actually determined and was necessary to support the judgment." *Phelps v. Hamilton*, 122 F.3d 1309, 1318 (10th Cir.1997) (citing *Jackson Trak Group, Inc. v. Mid States Port Auth.*, 242 Kan. 683, 751 P.2d 122, 128 (1988)). It is well established "that 'where a court has jurisdiction of the parties to an action and of the subject matter thereof, and renders a judgment within its competency, such judgment is final and conclusive, unless corrected or modified on appeal.'" *Id.* (quoting *McFadden v. McFadden*, 187 Kan. 398, 357 P.2d 751, 755–56 (1960)). In this case, the state probate court entered a final judgment which determined the validity of the antenuptial agreement.

Secondly, the parties must be the same or in privity. When deciding if the parties are privies, a careful examination of the facts and circumstances of the case is required. *Id.* at 1319 (citing *Goetz v. Bd. of Trustees*, 203 Kan. 340, 454 P.2d 481 (1969)). The general rule in Kansas is that a judgment cannot be rendered against one who is not a party or who does not intervene. *Id.* (citing *Winsor v. Powell*, 209 Kan. 292, 497 P.2d 292, 297 (1972)). An exception exists when a person, who is not a party, controls the action. *Id.* The Tenth Circuit in *Phelps* noted that "control," as it applies to issue preclusion and

as set forth in the Restatement of Judgments, is "the ability to exercise 'effective choice as to the legal theories and proofs to be advanced,' as well as 'control over the opportunity to obtain review.'" *Id.* (quoting Restatement (Second) of Judgments § 39 cmt. c (1982)). This case involves the same parties or privies. Both debtor and Bruce Unruh were parties to the underlying state court action. Bruce Unruh brought the state court action as administrator of Barbara Unruh's estate. Bruce Unruh and Cheryl Semmler are privies with the administrator of Barbara Unruh's estate.

Lastly, the issue must be actually determined and be necessary to support the judgment. The issue regarding the interpretation of the agreement was actually decided. The matter before the state court was the "construction of Paragraph 6 of the antenuptial agreement between Barbara J. Unruh and Charles M. Thompson as it pertains to the amount and reduction of the lien in favor of Barbara J. Unruh on certain real property." Appellant's Appendix, p. 30. The state court specifically determined that a lien existed in favor of the estate of Barbara J. Unruh, deceased, in the amount of $41,154.97.

The issue of the validity of the lien was necessary to support the state court's decision. There is nothing in the record which would support an argument that the parties did not have a full and fair opportunity to litigate their claim. *See Phelps*, 122 F.3d at 1322. Thus, collateral estoppel applies and the debtor is prohibited from relitigating the validity and interpretation of the antenuptial agreement.

Debtor's argument that collateral estoppel only applies to state issues and the avoidance of the lien is a question of federal law is without merit. The principal issue of lien avoidance is a question of federal law; however, in order to determine the lien avoidance, the validity and interpretation of the antenuptial agreement must be determined by state law.

Collateral estoppel may be invoked to bar relitigation of factual issues which are necessary to the issue to be determined. *See Klemens v. Wallace (In re Wallace)*, 840 F.2d 762, 764 (10th Cir.1988). The debtor cannot now contest the finality of the judgment in this court when his appropriate remedy would have been to pursue an appeal of the probate court's decision. The debtor concedes in his brief that the creation and the existence of the lien are issues of state law.

## B. THE LIEN CREATED BY THE ANTENUPTIAL AGREEMENT IS NOT AVOIDABLE PURSUANT TO 11 U.S.C. § 522(f)

The debtor seeks to avoid the lien created by the antenuptial agreement pursuant to 11 U.S.C. § 522(f). Section 522(f)(1)(A) allows the debtor to avoid the fixing of a lien on an interest of the debtor in property to the extent it impairs an exemption if the lien is a judicial lien. A "lien" is defined as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37). A "judicial lien" is defined as: "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). A security interest is a "lien created by an agreement." 11 U.S.C. § 101(51). There are three categories of liens, which are mutually exclusive: (1) security interests; (2) judicial liens; and (3) statutory liens. *In re Sanders*, 61 B.R. 381, 383 (Bankr.D.Kan.1986) (citing *In re Jones*, 13 B.R. 945, 947 (Bankr.E.D.Pa. 1981)). "It is the origin of the creditor's interest rather than the means of enforcement that determines the nature of the lien." *Id.* Just because a creditor resorts to the judicial process to enforce the lien, it does not mean the lien is a judicial lien. *Id.* Congress intended for consensual liens or liens by agreement to be defined as security interests. *Naqvi v. Fisher*, 192 B.R. 591, 595 (D.N.H.1995) (citing H.R.Rep. No. 95–595, 95th Cong., 1st Sess. at 314 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. at 26 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5813, 6271; *In re Dunn*, 109 B.R. 865, 867 (Bankr.N.D.Ind. 1988)). Courts have determined that liens created by settlement agreements which are incorporated into divorce decrees are consensual liens. *Id.* at 596 (citations omitted). Furthermore, the Supreme Court in *Farrey v. Sanderfoot*, 500 U.S. 291, 299, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991), noted that "the critical inquiry remains whether the debtor ever possessed the interest to which the lien fixed, before it fixed. If he or she did not, § 522(f)(1) does not permit the debtor to avoid the fixing of the lien on that interest."

The antenuptial agreement clearly provided for a lien if Barbara Unruh should sell her property and use the proceeds to purchase marital property. This agreement has been determined valid and unambiguous by the state court. The state court further found the antenuptial agreement created a lien against the debtor's homestead. It was not the action in state court that created the lien. The lien came into existence when the mortgage proceeds were used as a down payment on the marital residence. Even though the Appellees brought an action in state court which ultimately settled the amount of the lien, it is not a "judicial lien." Further, the debtor had no interest in the property to which the lien "fixed" at the time of the antenuptial agreement. For these reasons, the lien is not avoidable.

## CONCLUSION

The debtor is prohibited from relitigating the validity and interpretation of the antenuptial agreement. The state court determined that a lien existed in favor of Barbara Unruh's estate. The Bankruptcy Court correctly concluded that the lien is not a judicial lien and therefore not avoidable pursuant to 11 U.S.C. § 522(f)(1)(A). Therefore, the Bankruptcy Court's decision is **affirmed**.