In re Henry Dean **VAUGHAN** and Jessie Elaine Vaughan, also known as Elaine Vaughan, Debtors.

**Bank of Cushing, Appellant,**

v.

**Henry Dean Vaughan and Jessie Elaine Vaughan, Appellees.**

**BAP No. WO–03–094.**

**Bankruptcy No. 99–17361–NLJ.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

July 7, 2004.

Michael Paul Kirschner and Larry D. Patton of the Kirschner Law Firm, Oklahoma City, OK (G. Michael Solomon with them on the brief), for Appellant.

Bret D. Davis of Lamun Mock Cunnyngham & Davis, Oklahoma City, OK, for Appellees.

Before McFEELEY, Chief Judge, BROWN, and CAMPBELL [1], Bankruptcy Judges.

## OPINION

BROWN, Bankruptcy Judge.

The Appellant in this case obtained a partial summary judgment against the

---

**1.** Honorable A. Bruce Campbell, United States Bankruptcy Judge, United States Bankruptcy Court for the District of Colorado, sitting by designation.

Debtors, determining that its debt was nondischargeable under Section 523(a)(2) of the Bankruptcy Code.[2] It then obtained relief from stay to collect on the judgment and recorded a lien on the Debtors' homestead. The Debtors in turn filed a Section 522(f) motion to avoid the Appellant's lien, which the bankruptcy court granted. The Appellant contends that the bankruptcy court erred when it allowed the Debtors to utilize Section 522(f) to avoid its lien and, among other things, has asked this Court to consider (1) whether Section 522(f) may be used to set aside a lien that arises post-petition in connection with a nondischargeability judgment; (2) whether attorneys' fees earned post-petition in connection with the nondischargeability proceeding constitute a pre-petition debt; and (3) whether the parties' stipulated agreement as to the amount of the judgment rendered the lien recorded after the judgment a "consensual lien."

## I. Background

Prior to the bankruptcy filing, Appellees (the "Debtors") executed guaranty agreements in favor of Appellant Bank of Cushing (the "Bank"), to guarantee the indebtedness of Americare U.S.A. Limited ("Americare"). When Americare defaulted on its loan obligations, the Bank made a demand on the Debtors. In the course of negotiating a repayment arrangement, the Debtors provided the Bank with a personal financial statement. Eventually the Bank and the Debtors entered into a settlement agreement, which allowed the Debtors to repay their guaranty obligations over time, on a secured basis.

They did not complete their repayment plan, but instead filed bankruptcy.

The Bank filed an adversary proceeding against the Debtors, objecting to both the dischargeability of its debt under 11 U.S.C. § 523(a)(2)(A) & (B) and to the general discharge of the Debtors under Section 727.[3] The Bank asserted, among other things, that the Debtors had omitted numerous assets from their personal financial statement and that the Bank had been defrauded into entering into the settlement agreement with the Debtors. The Debtors' Chapter 7 trustee filed a separate proceeding, also objecting to the Debtors' general discharge. The two actions were consolidated "for purposes of administration and trial only."[4] The bankruptcy court later granted partial summary judgment on the Bank's Section 523(a)(2) claims in its January 10, 2002 Order. It reserved any ruling on the Bank's attorneys fees incurred in connection with the adversary proceeding. In its August 21, 2002 Order, the bankruptcy court awarded substantial fees to the Bank.

The Bank and the Debtors alike proceeded as if the August 21, 2002 Order represented a final judgment. The Debtors appealed the Order, but missed the filing deadline for the appeal by fourteen days. The Bank requested relief from the automatic stay for purposes of collection on the nondischargeable debt set forth in the August 21, 2002 Order. In a sur-reply to the Bank's stay motion, the Debtors requested, as an alternative form of relief, that the bankruptcy court certify the August 21, 2002 Order as a final judgment, pursuant to Bankruptcy Rule 7054. "This

---

**2.** All references to "Section" shall refer to Title 11, United States Code, unless otherwise noted.

**3.** The Bank also objected to dischargeability under Section 523(a)(6), but it subsequently dismissed this claim. District Court Order,

entered Dec. 17, 2003, at 3, *in* Appellee's App. at 3.

**4.** District Court Order at 2, *in* Appellee's App. at 2.

was the bankruptcy court's first indication that the Debtors did not consider the August 21 Order to constitute a final and immediately appealable judgment." The bankruptcy court declined to certify its August 21, 2002 Order as final. It then granted the Bank's request to lift the automatic stay (the "Stay Order") for purposes of allowing it to collect on its debt.

The Debtors appealed the Stay Order to the district court. The District Court vacated the Stay Order on the basis that it had been premised on the erroneous legal conclusion that the August 21, 2002 Order was a final order (the "District Court Stay Order"). Because the bankruptcy court had not yet certified the order under Bankruptcy Rule 7054, the district court found that there was no final judgment on which the Bank could execute.

Prior to the district court ruling, the Bank recorded a judgment lien against the Debtors' primary residence.[5] The Debtors filed a motion to avoid this lien under Section 522(f). The bankruptcy court granted this motion (the "Section 522(f) Order"), setting aside the Bank's judgment lien, finding that even though the attorney fees awarded to the Bank in the August 21, 2002 Order represented fees earned post-petition, the obligation to pay the fees was incurred pre-petition and, therefore, was a pre-petition debt that gave rise to a judicial lien that was avoidable under Section 522(f) because it impaired the Debt-

ors' homestead exemption.[6] In the present appeal, the Bank seeks to overturn this Section 522(f) Order.

Subsequent to the oral arguments on this appeal, the bankruptcy court certified the August 21, 2002 Order as final for purposes of appeal.[7] The Debtors have appealed the underlying judgment. In oral arguments, the parties informed this Court that the Trustee's Section 727 discharge claims remain pending, but that the bankruptcy court has taken under advisement summary judgment motions on the Trustee's Section 727 claims.

## II. Appellate Jurisdiction

The Debtors filed a timely notice of appeal under Fed. R. Bankr.P. 8002. The Bankruptcy Court's Order of November 21, 2003, granting the Debtors' Motion to avoid the judicial lien of the Bank, is a final, appealable order for purposes of this Court's jurisdiction.[8] With the consent of the parties, this Court has jurisdiction to hear appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit.[9] Neither party has opted to have this appeal heard by the United States District Court for the Western District of Oklahoma and, therefore, they are deemed to have consented to the jurisdiction of this Court.[10]

## III. Standard of Review

■■■ Where, as here, the salient facts are undisputed, we conduct a *de novo* re-

---

5. Motion to Avoid Judgment Lien and Brief in Support, filed June 26, 2003, at 2, *in* Appellant's App. at 205.

6. Order on Debtor's Motion to Avoid Judgment Lien, entered Nov. 21, 2003, at 1, *in* Appellant's App. at 237.

7. Order Certifying August 21, 2002 Order as a Final Judgment Pursuant to Fed.R.Civ.P. 54(b) and Notice of Hearing on Defendant's Stay Motion, entered March 26, 2004, *in* Appellant's Supp.App.

8. 28 U.S.C. § 158; *Tedeschi v. Falvo (In re Falvo),* 227 B.R. 662, 663 (6th Cir. BAP 1998).

9. 28 U.S.C. § 158(a)(1), (b)(1), (c)(1); *Gregory v. Zubrod (In re Gregory),* 245 B.R. 171, 172 (10th Cir. BAP 2000), *aff'd without published opinion,* 246 F.3d 681 (10th Cir.2000).

10. 28 U.S.C. § 158(c); Fed. R. Bankr.P. 8001(e); 10th Cir. BAP L.R. 8001–1.

view of the lower court's conclusions of law.[11] When conducting a *de novo* review, the appellate court is not constrained by the trial court's conclusions, and may affirm the trial court on any legal ground supported by the record.[12]

## IV. Discussion

### A. Debtors May Use Section 522(f) to Set Aside Liens on Certain Nondischargeable Judgments

■ The Bank asserts that the bankruptcy court erred in setting aside its lien on the Debtors' homestead for several reasons. First, it claims that Section 522(f) cannot be utilized by a debtor to avoid a lien that arose post-petition. Section 522(f)(1) provides that a "debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled ... if such lien is a judicial lien...."[13] By its plain language, this statute contains no qualifications as to when the lien must attach. To understand the purpose and intention of this subsection, we must consider Section 522 as a whole. Other provisions of Section 522 set forth limitations as to when exemptions may or may not trump a creditor's claim or lien rights, but they focus on the nature and timing of the claim, rather than the time when the lien affixed.

Section 522(c) sets forth a general rule that exempt property will not be liable for pre-petition debts, but then it lists four exceptions to this general rule. It provides:

(c) property exempted under this section is not liable during or after the case for any debt of the debtor that arose ... before the commencement of the case, except—

(1) a debt of a kind specified in section 523(a)(1) or 523(a)(5) of this title;

(2) a debt secured by a lien that is—

(A) (i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and

(ii) not void under section 506(d) of this title; or

(B) a tax lien, notice of which is properly filed;

(3) a debt of a kind specified in section 523(a)(4) or 523(a)(6) ... owed by an institution-affiliated party of an insured depository institution to a Federal depository institutions regulatory agency acting in its capacity as conservator, receiver, or liquidating agent for such institution; or

(4) a debt in connection with fraud in the obtaining or providing of any scholarship, grant, loan, tuition, discount, award, or other financial assistance for purposes of financing an education at an institution of higher education (as that term is defined in section 101 of the Higher Education Act of 1965 (20 U.S.C. 1001)).[14]

We note several basic premises at work in this statute. First, Section 522(c) seeks to insulate exempt property, but only against pre-petition debts. Second, it does not protect against all pre-petition debts because it expressly excludes certain pre-

---

**11.** *Andersen v. UNIPAC–NEBHELP (In re Andersen),* 179 F.3d 1253, 1255 (10th Cir.1999).

**12.** *See Wolfgang v. Mid–America Motorsports, Inc.,* 111 F.3d 1515, 1524 (10th Cir.1997).

**13.** 11 U.S.C. § 522(f)(1)(A).

**14.** 11 U.S.C. § 522(c).

petition tax debts, family support obligations, fraudulent student loan debts, and certain obligations owed to banking regulators. Third, exempt property is generally not insulated from pre-petition debts that are secured by liens, unless the liens have been avoided under one of the specified statutes. Fourth, there is no exclusion mentioned for debts that arise under Section 523(a)(2).

The fact that Section 522(c) expressly excepts a few debts that are nondischargeable under Section 523, but makes no mention of the others, evidences Congressional intent to insulate exempt property from most nondischargeable debts. The maxim *expressio unius est exclusio alterius* is a canon of statutory construction holding that to express or include one thing implies the exclusion of the other or of the alternative.[15] This general rule may be overcome by a strong indication of contrary legislative intent or policy.[16] In this case, the legislative history of Section 522(c) not only does not evidence a contrary intent, but it acknowledges the limited number of nondischargeable debts excepted from subsection (c)'s general protection of exempt property.[17] "Thus, § 522(c) performs both a protective function, by preserving the exemption if nondischargeable claims other than those specifically excepted by § 522(c) are sought to be enforced against exempt property, and a limiting function, by denying the exemption protections for certain kinds of nondischargeable claims and unavoided liens."[18] Moreover, "[t]he bank has referred us to no legislative history, nor have we found any, suggesting that section 523 was intended, generally, to trump section 522. Indeed, had that been the intention the exceptions in section 522(c) would have been redundant."[19]

The Bank asserts that *Farrey v. Sanderfoot*[20] supports its position that Section 522(f) does not apply to post-petition liens. *Farrey* analyzed lien avoidance in connection with a divorce decree that simultaneously created the debtor's property interest and the ex-spouse's lien. *Farrey* held that Section 522(f) only avoids judicial liens that have attached "at some point *after* the debtor obtained the interest."[21] Thus, if a debtor had no property interest *before* the lien attached, then the lien cannot be avoided under Section 522(f). *Farrey* did not address whether the lien must exist at the time of the petition.

In *Farrey*, the Supreme Court made general observations on the history and purpose of Section 522(f), including the intent of this statute to undo the liens that creditors often obtain in the months preceding the bankruptcy filing. It referred to Congress' intent to thwart the creditor's "rush to the courthouse." It referred to

---

**15.** Singer, Statutes and Statutory Construction § 47:23 (6th ed.2000); Black's Law Dictionary 602 (7th ed.1999).

**16.** *In re Hong*, No. 01–JAB35072, 2002 WL 1465737, at *5 (Bankr.D.Utah June 4, 2002) (citing Singer, *supra* n. 22).

**17.** S.Rep. No. 95–989, at 76, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5862 ("Subsection (c) insulates exempt property from prepetition claims other than tax claims (whether or not dischargeable), and other than alimony, maintenance, or support claims that are excepted from discharge.").

**18.** *S & C Home Loans v. Farr (In re Farr)*, 278 B.R. 171, 177 (9th Cir. BAP 2002).

**19.** *Walters v. United States National Bank (In re Walters)*, 879 F.2d 95, 97 (3rd Cir.1989).

**20.** 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991).

**21.** *Id.* at 296, 111 S.Ct. 1825 (emphasis added).

the predecessor of Section 522(f), which invalidated liens, but only those obtained in the four months prior to the petition. Clearly, all of these references were to pre-petition liens. It made these observations, however, in the context of explaining that Section 522(f) was intended to protect the debtor's exemptions. But it distinguished the case before it, where the debtor was using the statute as a sword, not a shield, to defeat his ex-spouse's interest in the home, i.e. her lien rights. She obtained her lien as part of a divorce decree that simultaneously eliminated her ownership interest, giving it to her husband, in exchange for her lien interest. Because he had no ownership interest separate from her interest, until the lien interest arose, there was no interest in property of the debtor to which the lien could "affix." It found that otherwise a judgment lien debtor could cleanse title to an asset by transferring it to a third party, and then the third party could file bankruptcy and avoid the lien under this statute.

None of the Supreme Court's concerns in *Farrey* are at play in the present case.[22] More importantly, *Farrey* did not address the issue of whether the lien must be a pre-petition lien in order for the debtor to avail himself of Section 522(f)'s protection of his exemptions. Thus, we find no deterrent to avoiding a lien arising from a nondischargeability judgment, even though the lien does not arise until after a petition in bankruptcy is filed. There is nothing in either Section 522(c) or (f) that would prevent this result. "Moreover, it would be against basic bankruptcy principles of eq-

uitable distribution to treat a pre-petition lien creditor worse than a pre-petition unsecured creditor who later obtains a lien on the debtor's property."[23] Nor does this result rob the Bank of any benefit in having obtained a nondischargeability judgment. Assuming no violation of the stay, the Bank may pursue collection against nonexempt assets of the Debtors, including their post-petition income.

## B. The Debt Liquidated in the August 21, 2002 Order Is a Pre-petition Debt

The Bank further asserts that the bankruptcy court erred in entering the Section 522(f) Order because the legal fees reduced to judgment in the August 21, 2002 Order did not represent a pre-petition debt. It argues that, because the fees were earned post-petition in pursuit of the nondischargeability judgment, the Bank had no right to payment of this claim on the petition date. It therefore concludes that the Bank's fees constitute a post-petition debt, which is outside the scope of Section 522(f).

The Tenth Circuit has acknowledged that a split of authority exists as to when a right of payment arises for bankruptcy purposes on a claim that is unmatured on the petition date. Twice the Tenth Circuit has been presented with this question and twice it has avoided a definitive holding on this issue, resolving each appeal on other grounds. In *Grynberg v. Danzig Claimants (In re Grynberg)*,[24] creditors had obtained a class action judgment against the

---

**22.** The Bank also asserts that *Nichols v. B.J. Fox Enterprises, Inc. (In re Nichols)*, 265 B.R. 831 (10th Cir. BAP 2001), supports its position because it cites favorably the same legislative history mentioned by the Supreme Court in *Farrey*. For the reasons set forth above, we conclude that the legislative history of Section 522(f) included in *Farrey* favors the

Debtors' position and it does not deal directly with the issue of whether Section 522(f) is applicable to liens that affix post-petition.

**23.** *Sumy v. Schlossberg (In re Sumy)*, 777 F.2d 921, 930 & n. 22 (4th Cir.1985).

**24.** 966 F.2d 570 (10th Cir.1992).

debtors. In response, the debtors filed for Chapter 11 relief. The debtors sought and obtained bankruptcy court approval to proceed with their appeal of the pre-petition judgment. The state appellate court affirmed the judgment and awarded costs associated with the post-petition appeal to the class action plaintiffs. When the plaintiffs attempted to assert their claim for costs in the bankruptcy proceeding, the debtors argued that the costs had been awarded in violation of the stay. Both the bankruptcy court and district court analyzed whether the costs represented a pre-petition debt, subject to the automatic stay, or a post-petition debt, which was not stayed. Both courts found that the debt was a post-petition debt.

The Tenth Circuit found that the stay had not been violated, regardless of whether the costs were a pre- or post-petition debt, because the bankruptcy court had allowed the appeal to proceed post-petition, after dismissing the debtors' adversary complaint to determine the validity of the plaintiffs' lien rights. It found that, by these actions, the bankruptcy court had abstained in favor of the jurisdiction of the state court. The appeal was tantamount to an adversary proceeding to determine the lien rights of plaintiffs and the nondischargeability of the plaintiffs' debt. Because prosecuting an adversary proceeding does not violate the stay, neither did the actions taken before the state appellate court.

In *Franklin Savings Ass'n v. Office of Thrift Supervision*,[25] the parties had engaged in protracted pre-petition litigation, concerning whether Franklin, a troubled savings and loan association, should be placed under a conservatorship. When Franklin lost this litigation, it filed for Chapter 11 relief. The debtor, however, continued to challenge the conservatorship ruling post-petition, by filing a motion for rehearing. Following the dismissal of the request for rehearing, the Director of the O.T.S. filed a claim for litigation costs in the district court. The costs were denied by the district court on the ground that the assertion of the claim for costs was made in violation of the automatic stay. On appeal, the parties argued as to whether the costs constituted a pre- or post-petition debt. The Tenth Circuit acknowledged:

> the current split of authority regarding when a right of payment to an unmatured claim arises for bankruptcy purposes. *See In re Grynberg*, 966 F.2d 570 (10th Cir.1992) (although analysis based on postpetition and prepetition categories is superficially appealing, district court award of appellate costs affirmed on other grounds). While the Third Circuit, in *Matter of M. Frenville Co.*, 744 F.2d 332, 336 (3d Cir.1984), *cert. denied*, 469 U.S. 1160, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), holds an unmatured claim cannot arise until the legal cause of action accrues, regardless of whether predicate acts occurred prepetition, other federal circuits disagree, *see, e.g., Grady v. A.H. Robins Co.*, 839 F.2d 198, 202 (4th Cir.), *cert. dism'd*, 487 U.S. 1260, 109 S.Ct. 201, 101 L.Ed.2d 972 (1988); *In re Jensen*, 127 B.R. 27, 30–31 (9th Cir. BAP 1991).[26]

It declined to resolve the issue for this circuit because it found that, even under the *Frenville* standard, the Director's costs clearly constituted a pre-petition debt. While the court had not awarded costs prior to the petition date, they had been incurred pre-petition. "With our judgment in favor of the Director [pre-

**25.** 31 F.3d 1020 (10th Cir.1994).

**26.** *Id.* at 1022.

bankruptcy], the Director had sufficient grounds to claim its bill of costs, regardless that the right was tolled by and contingent on the denial of rehearing...." [27] Because it found that the costs were a pre-petition debt, it held that the Director's request for these costs had been made in violation of the stay.

In the absence of a controlling Tenth Circuit precedent, we begin our analysis with the Bankruptcy Code's broad definition of "claim."

> (5) "claim" means—
>
> (A) Right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; .... [28]

By way of contrast, the Bankruptcy Act of 1898 (the "Act") contained no definition of a "claim." It relied instead on the concepts of "provability" and "allowability." Section 57(d) of the Act disallowed an unliquidated or contingent claim, unless it could be liquidated or estimated in a manner and time period specified by the bankruptcy court. On the other hand, the legislative history of the Bankruptcy Code evidences Congressional intent to remove the uncertainty regarding contingent claims and treat them as the Act treated them in the reorganization chapters.[29]

By this *broadest possible definition,* and by the use of the term throughout title 11, ... the bill contemplates that all legal obligations of the debtor, *no matter how remote or contingent,* will be able to be dealt with in the bankruptcy case. *It permits the broadest possible relief* in the bankruptcy court.[30]

In one of the leading cases that has adopted a more narrow definition of "claim," *Avellino & Bienes v. M. Frenville Co. (In re M. Frenville Co.),*[31] the Third Circuit focused primarily on the "right to payment" aspect of the Bankruptcy Code's definition of "claim." Because an indemnitee had no right to sue for contribution or indemnification until it had been sued or made a payment, the *Frenville* court found it had no "right to payment" and, therefore, no "claim." The court centered its analysis on whether a right to sue on the claim existed under state law. It failed to give proper meaning to other aspects of the Code's definition, which include "unmatured," "unliquidated," and "contingent" claims. We agree with the Court in *In re Black*[32] that *Frenville* is not consistent with the Supreme Court decisions applying a broad definition of claim.[33]

Based on the foregoing, we conclude that the Bank's claim for fees attributable to the prosecution of the dischargeability proceeding constitutes a contingent or unmatured claim, which may not have been cognizable under state law on the petition date, but which nevertheless constitutes a pre-petition claim for purposes of Section

---

**27.** *Id.*

**28.** 11 U.S.C. § 101(5)(A).

**29.** Bankruptcy Act, 11 U.S.C. § 106(1)(Chapter X); § 307(2)(Chapter XI); § 406(2)(Chapter XII); and § 606(1)(Chapter XIII) (repealed 1978).

**30.** S.Rep. No. 95–989, at 22, *reprinted in* 1978 U.S.C.C.A.N. 5787, 5808; H.R.Rep. No. 95–595, at 309, *reprinted in* 1978 U.S.C.C.A.N. 5963, 6266. (emphasis added).

**31.** 744 F.2d 332, 336 (3d Cir.1984).

**32.** 70 B.R. 645 (Bankr.D.Utah 1986).

**33.** *Id.* at 650 (citing *Ohio v. Kovacs,* 469 U.S. 274, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985)). *See also Cohen v. de la Cruz,* 523 U.S. 213, 218, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998) ("Those definitions 'reflec[t] Congress' broad ... view of the class of obligations that qualify as a 'claim' giving rise to a 'debt.' '").

522(f). In this case, both the guaranty agreement and the subsequent settlement agreement, entered into between the Debtors and the Bank, provided that, in the event of default, the defaulting party would pay the costs of collection, including attorneys' fees.[34] Because the underlying judgment is the subject of a separate appeal, we express no opinion on the propriety of the fees awarded by the bankruptcy court in the August 21, 2002 Order. We conclude only that, to the extent fees were properly awarded, they constitute a prepetition debt within the scope of Section 522(f).

## C. The Bank's Lien Is a Judicial Lien, Not a Consensual Lien

■ The Bank argues that the bankruptcy court erred in determining that the Bank's lien against Debtors' property constituted a judicial lien for purposes of Section 522(f). The Bank contends that the lien is the result of an agreement between the parties, memorialized in their Stipulation regarding attorney's fees and costs.[35] The Bank argues that because the Debtors agreed not to contest the compromised amount of its fees and costs, and the lien flows from this Stipulation, it represents a consensual lien. Because Section 522(f) does not apply to consensual liens, it cannot be used to avoid such a lien.

■ For definitional purposes in the Bankruptcy Code, "[t]here are three categories of liens, which are mutually exclu-sive: (1) security interests; (2) judicial liens; and (3) statutory liens."[36] The Bankruptcy Code defines a judicial lien as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding."[37] A security interest, or consensual lien, is a "lien created by an agreement."[38] This Court has previously addressed the distinctions between a judicial lien and a consensual security interest.

"It is the origin of the creditor's interest rather than the means of enforcement that determines the nature of the lien." Just because a creditor resorts to the judicial process to enforce the lien, it does not mean the lien is a judicial lien. Congress intended for consensual liens or liens by agreement to be defined as security interests. Courts have determined that liens created by settlement agreements which are incorporated into divorce decrees are consensual liens.[39]

In this case, the record evidences no agreement, by settlement or otherwise, that the Bank would obtain a lien.

The cases relied on by the Bank are factually distinguishable. In each case, the settlement agreement itself contained a specific provision granting the creditor a lien against the debtor's property. In *Cowan v. Cowan (In re Scott)*,[40] the settlement agreement, incorporated into the divorce decree, specifically provided that the husband would obtain a judgment lien against the wife's residential real property

---

**34.** Guaranty Agreement, *in* Appellant's App. at 107; Settlement Agreement at 5, *in* Appellant's App. at 113.

**35.** The Stipulation is set forth in Appellant's App. at 191–97.

**36.** *Thompson v. Unruh (In re Thompson)*, 240 B.R. 776, 781 (10th Cir. BAP 1999) (citing *In re Sanders*, 61 B.R. 381, 383 (Bankr.D.Kan. 1986)).

**37.** 11 U.S.C. § 101(36).

**38.** 11 U.S.C. § 101(51).

**39.** *Thompson*, 240 B.R. at 781 (citations omitted).

**40.** 12 B.R. 613 (Bankr.W.D.Okla.1981).

to secure his judgment.[41] In *Thompson v. Unruh (In re Thompson)*, the parties entered into an antenuptial agreement that granted the wife a lien against any real property purchased by the parties in the amount of her contribution of separate funds.[42] In *Naqvi v. Fisher (In re Fisher)*,[43] the parties' written stipulation granted the wife a lien against the husband's assets to secure his debt to her.[44] In contrast, the Stipulation executed by the parties in this case contained no language granting a lien. The lien in question was obtained, not by the parties' agreement, but by the recording of the judgment. Accordingly, it is a judicial lien within the meaning employed by Section 522(f).

### D. The Bank's Remaining Arguments Will Not Be Considered by this Court

The Bank asserts that Debtors either waived their right to seek avoidance of the Bank's lien, or should be equitably estopped from seeking its avoidance, because the Stipulation executed by the parties represented a final settlement and resolution of the attorney's fees and costs. The Bank contends that, because Debtors agreed to a final judgment for attorney's fees and costs, they should not now be allowed to seek avoidance of the very lien

that resulted from imposition of the final judgment in favor of the Bank. The Bank states, "Call the Vaughans' conduct waiver or equitable estoppel, one of those principles was applicable and should have been applied by the Bankruptcy Court."[45]

■ The Bank does not provide any citation to the record below that would demonstrate that the Bank raised its waiver and equitable estoppel arguments before the bankruptcy court. The Section 522(f) Order does not address, nor does it contain a ruling on, waiver or equitable estoppel issues. Similarly, a review of the transcript from the hearing held on September 11, 2003[46] does not contain any testimony or argument in regard to the Bank's waiver and estoppel theories.

■ " '[I]t is counsel's responsibility to see that the record excerpts are sufficient for consideration and determination of the issues on appeal and the court is under no obligation to remedy any failure of counsel to fulfill that responsibility.' "[47] Thus, based on the record, it appears that the Bank is raising the waiver and estoppel arguments for the first time on appeal. "Issues not raised before the trial court will not ordinarily be considered when raised for the first time on appeal."[48] Accordingly, this Court will not consider the

---

41. *Id.* at 614.

42. *Thompson*, 240 B.R. at 778.

43. 192 B.R. 591 (D.N.H.1995).

44. *Id.* at 593.

45. Appellant's Opening Brief at 26, l. 16–17.

46. Appellant's App. at 210–236. We need not rule on the propriety of the late submission of the full transcript of this hearing on May 17, 2004, because neither the prior excerpts nor the full transcript contain any evidence or arguments regarding the Bank's waiver and estoppel theories.

47. *Rubner & Kutner, P.C. v. United States Trustee (In re Lederman Enters., Inc.)*, 997 F.2d 1321, 1323 (10th Cir.1993) (quoting *Deines v. Vermeer Mfg. Co.*, 969 F.2d 977, 979 (10th Cir.1992) (further citation omitted)); *Armstrong v. Rushton (In re Armstrong)*, 294 B.R. 344, 362 (10th Cir. BAP 2003), *aff'd without published opinion*, No. 03–4177, 2004 WL 1173434, 97 Fed.Appx. 285 (10th Cir. May 27, 2004).

48. *Diviney v. NationsBank (In re Diviney)*, 225 B.R. 762, 771 (10th Cir. BAP 1998); *Blagg v. Miller (In re Blagg)*, 223 B.R. 795, 804 (10th Cir. BAP 1998). *See also Novell, Inc. v. Federal Ins. Co.*, 141 F.3d 983, 990 (10th Cir.1998).

Bank's waiver and estoppel issues in this appeal.

Finally, the Bank argues that its lien does not impair the Debtors' homestead exemption as required by Section 522(f), urging this Court to reconsider its prior ruling in *Coats v. Ogg (In re Coats).*[49] The Court declines to do so. This panel is bound by the decisions of other BAP panels.[50] Also, this argument, like the last one, appears to be raised for the first time on appeal.

## V. Conclusion

For the foregoing reasons, the Order of November 21, 2003, in favor of Debtors, avoiding the judicial lien of the Bank under Section 522(f), is AFFIRMED.

---

**49.** 232 B.R. 209 (10th Cir. BAP 1999).

**50.** *Blagg,* 223 B.R. at 804.