**In re Howard Earl NICHOLS, Debtor.**

**Howard Earl Nichols, Appellant,**

v.

**BJ Fox Enterprises, Inc., Jenny R. Armstrong, Robert Fox, Jean Fox, and Rose Corporation, Appellees.**

**BAP No. WO–01–023.**
**Bankruptcy No. 01–10129.**

United States Bankruptcy Appellate Panel of the Tenth Circuit.

Aug. 24, 2001.

---

**24.** Mo. Stat. Ann. § 513.427 (Supp.2000).

**25.** 42 U.S.C.A. § 407(b).

Submitted on the briefs: *

Rodney K. Freed (James E. Palinkas, with him on the briefs), Shawnee, OK, for Appellant.

Denver Meacham II, Clinton, OK, for Appellees.

Before McFEELEY, Chief Judge, CLARK, and ROBINSON, Bankruptcy Judges.

## OPINION

ROBINSON, Bankruptcy Judge.

The Chapter 7 debtor appeals an order of the United States Bankruptcy Court for the Western District of Oklahoma denying his motion to avoid a lien pursuant to 11 U.S.C. § 522(f),[1] and granting a motion for relief from stay. For the reasons set forth below, we AFFIRM.

### I. *Background*

In 1990, the debtor purchased two parcels of real property ("Parcel A" and "Parcel B"). He financed the purchase of Parcel A with loans from Jenny R. Armstrong ("Armstrong") and from Robert and Jean Fox (the "Foxes") pursuant to separate promissory notes. He financed Parcel B with a loan from Armstrong pursuant to a promissory note. The parties executed mortgages related to each of the notes, with Parcel A or Parcel B serving as security for the pertinent notes. Both of the mortgages were recorded.

In 1997, the debtor purchased "Parcel C." He financed this purchase with a loan from Armstrong pursuant to a promissory note. The parties again executed a mortgage, providing Parcel C as security for the note, and Armstrong recorded the mortgage.

The debtor failed to make payments to Armstrong and the Foxes (collectively, the "Creditors"), and in October 2000, the Creditors obtained a default judgment of

---

* After examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012; 10th Cir. BAP L.R. 8012–
1(a). The case is therefore ordered submitted without oral argument.

1. Unless otherwise noted, all future statutory references are to title 11 of the United States Code.

foreclosure against him, pertaining to all of the mortgages. In its judgment of foreclosure, the Oklahoma state court ruled that the Creditors' liens were valid. The state court scheduled a hearing to confirm a sheriff's sale for January 26, 2001.

On January 8, 2001, prior to confirmation of the sale, the debtor filed a Chapter 7 petition. Parcel C was the only real property the debtor scheduled in this bankruptcy. On his schedules, he valued Parcel C at $30,000 as of the petition date, and he claimed Parcel C to be exempt in the amount of $30,000. There is no record that the Creditors or any other person objected to the debtor's claim of exemption in Parcel C. Parcels A and B are not mentioned at all in the debtor's schedules.

The debtor moved to avoid Armstrong's lien in Parcel C pursuant to § 522(f), arguing that her state court foreclosure judgment was an avoidable judicial lien that impaired his homestead exemption.[2] Armstrong objected to the debtor's motion, but her objection is not part of the record on appeal. Subsequently, the Creditors moved for relief from stay, seeking permission to complete foreclosure of their mortgage liens and directing the Chapter 7 trustee to abandon the estate's interest in Parcels A, B and C.

The bankruptcy court held an evidentiary hearing on the debtor's § 522(f) motion and, apparently by the parties' agreement, heard the Creditors' relief from stay motion at the same time. Other than a transcript of the bankruptcy court's bench ruling, there is nothing in our record from this hearing. From this transcript, it appears that the debtor questioned the perfection of the Creditors' mortgages, claiming that they could not be recorded because they were not prop-erly notarized. The debtor argued that because the mortgages were not proper, the only lien against Parcel C was a judicial lien created by the state court's foreclosure decree, and that lien was avoidable under § 522(f)(1)(A).

Disagreeing, the bankruptcy court concluded that Armstrong's lien in Parcel C was a consensual lien that was not avoidable under § 522(f)(1)(A). The bankruptcy court reasoned that the lien was consensual and not judicial, because the debtor acknowledged giving Armstrong a mortgage on Parcel C; the state court held that the mortgage lien was valid; and the mortgage was not void, even if a faulty notarization prevented Armstrong from perfecting her interest. The bankruptcy court also summarily granted the Creditors' relief from stay motion.

On March 21, 2001, the bankruptcy court entered an order denying the debtor's § 522(f) motion and granting the Creditors' motion for relief from stay for the reasons stated in its bench ruling. The debtor filed a timely notice of appeal from this final order, and the parties have consented to this Court's jurisdiction over this case. *See* 28 U.S.C. §§ 158(a)(1), (c)(1); Fed. R. Bankr.P. 8001(a), 8002(a); 10th Cir. BAP L.R. 8001–1; *see also In re Thompson,* 240 B.R. 776, 779 (10th Cir. BAP 1999) (order denying a motion to avoid a lien under § 522(f) is a "final" order.)

## II. *Discussion*

The only issue on appeal is whether the bankruptcy court erred in refusing to avoid Armstrong's interest in Parcel C

---

**2.** Although the debtor refers to an $85,000 debt to Armstrong, which relates to Parcel A, his motion only seeks to avoid Armstrong's lien in Parcel C, and Parcel C is the only property in which the debtor claimed an exemption.

pursuant to § 522(f).[3] Section 522(f) states, in relevant part, that:

> (f)(1) Notwithstanding any waiver of exemptions, but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> (A) a judicial lien ...; or
>
> (B) a nonpossessory, nonpurchase-money security interest in any— [defined personal property of the debtor].

11 U.S.C. § 522(f)(1). Subsection (f)(1)(B) does not apply in this case, because it pertains only to liens in a debtor's personal property, not real property, such as Parcel C. Thus, the only issue is whether Armstrong's interest in Parcel C is a "judicial lien" that is subject to avoidance by the debtor under § 522(f)(1)(A). If Armstrong's interest is anything other than a "judicial lien," § 522(f)(1)(A) does not apply.

The word "lien" is defined in the Bankruptcy Code as a "charge against or interest in property to secure payment of a debt or performance of an obligation[.]"

11 U.S.C. § 101(37). A "judicial lien" is defined as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding[.]" *Id.* at § 101(36). A "security interest" is a "lien created by an agreement[.]" *Id.* at § 101(51). The latter consensual lien is very different from a "judicial lien," and it is not subject to avoidance under § 522(f)(1)(A). *See* S.Rep. No. 95–989, at 24 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787; H.R.Rep. No. 95–595, at 311–14 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963 (three types of liens covered by the Bankruptcy Code, *i.e.*, statutory, judicial and consensual security interests, are "mutually exclusive"); *accord Thompson*, 240 B.R. at 781.

Armstrong's interest in Parcel C to secure payment of the debtor's purchase money note to her, or her "lien," was not obtained by judgment, levy, sequestration, or other legal or equitable process, but rather arose as a result of the agreement between the debtor and Armstrong. Accordingly, as defined by § 101(51), Armstrong's lien is a "security interest," and § 522(f)(1)(A) does not apply.

◼ Furthermore, Armstrong's security interest is not transformed into a judicial lien as a result of the state court's foreclo-

---

**3.** The debtor states on appeal that he has "no dispute with the Appellees seeking foreclosure and judgment for [Parcels A and B]." Appellant's Brief at 5. In addition, other than summarily stating in his Statement of Issues that relief from stay in regard to Parcel C is an issue on appeal, the debtor has not raised any points of error or arguments in his brief with regard to the bankruptcy court's relief from stay order as to Parcel C. Furthermore, other than including the Creditors' relief from stay motion in his Appendix, the debtor has provided no record related to the bankruptcy court's relief from stay order. Accordingly, the propriety of the portion of the bankruptcy court's order granting the Creditors relief from stay has been waived as to Parcels A and

B, and cannot be reviewed or has been waived as to Parcel C. *See Scott v. Hern*, 216 F.3d 897, 912 (10th Cir.2000) (failure to provide record is ground to affirm); *Hernandez v. Starbuck*, 69 F.3d 1089, 1093 (10th Cir.1995) (court is not required to manufacture a party's appellate arguments, and if issue is not briefed and argued it is waived); *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1231 (10th Cir.1990) (issues listed in a party's brief, but not argued, are waived on appeal). The portion of the bankruptcy court's order granting the Creditors relief from stay, therefore, must be affirmed, and the only issue for discussion in this appeal is whether the bankruptcy court erred in refusing to avoid Armstrong's lien in Parcel C.

sure decree. In discussing the type of liens avoidable under § 522(f)(1), we have stated:

> "It is the origin of the creditor's interest rather than the means of enforcement that determines the nature of the lien." [*In re Sanders*, 61 B.R. 381, 383 (Bankr. D.Kan.1986) ]. Just because a creditor resorts to the judicial process to enforce the lien, it does not mean the lien is a judicial lien [avoidable under § 522(f)(1)(A) ].

*Thompson*, 240 B.R. at 781. In *Thompson*, a lien against the debtor's exempt homestead created by a prepetition antenuptial agreement was not transformed into a "judicial lien" avoidable under § 522(f)(1)(A) because a state court had entered a judgment setting the amount of the lien.

 As in *Thompson*, the origin of Armstrong's lien was consensual, and it was not transmuted into a judicial lien when the Creditors obtained a foreclosure decree from the state court. Indeed, it is well-settled under Oklahoma law that a mortgage lien is neither merged into a foreclosure decree nor extinguished by a foreclosure decree, and that a foreclosure decree in no way creates a lien, but rather is a means of enforcing the lien created by contract. *Methvin v. American Sav. & Loan Assoc.*, 194 Okla. 288, 151 P.2d 370, 377 (1944); *Anderson v. Barr*, 178 Okla. 508, 62 P.2d 1242, 1246 (1936); *Bank of the Panhandle v. Hill*, 965 P.2d 413, 417 (Okla. Civ.App.1998). A mortgage lien is extinguished only by foreclosure sale. 42 Okla. Stat. Ann. § 22 (1990). Thus, when the state court entered its foreclosure decree, Armstrong's consensual security interest continued to exist, and a new "judicial lien" was not created. Furthermore, on the debtor's petition date, Armstrong had a security interest in Parcel C under Oklahoma law because the foreclosure sale,

which would have extinguished her consensual lien, had not been confirmed and was stayed pursuant to § 362(a). Based on this analysis, there is no judicial lien to which § 522(f)(1)(A) applies.

The rule that a security interest is not transformed into a judicial lien by a prepetition foreclosure decree is in accord with other cases on this issue. *In re Goodwin*, 133 B.R. 141, 143 (Bankr. S.D.Ind.1990) (citing cases, including *In re Dunn*, 10 B.R. 385 (Bankr.W.D.Okla. 1981)); *Miller v. United States (In re Miller)*, 8 B.R. 672, 673 (Bankr.N.D.Iowa 1981), *reaffirmed in In re Sinnard*, 91 B.R. 850, 854 (Bankr.N.D.Iowa 1988) (citing numerous cases); *see In re Vincent*, 260 B.R. 617, 621 (Bankr.D.Conn.2000) (rejecting the idea that this could happen). In *Miller*, the court reached this conclusion after thoughtful analysis:

> There is nothing in the legislative history of the Code that would indicate that Congress intended that a diligent creditor who obtained a judgment in foreclosure with respect to his security interest would thereby lose his rights through avoidance in the bankruptcy proceedings by the use of § 522(f)(1). It seems clear that the provision for avoidance of judicial liens was meant to apply to judgements obtained on debts that would otherwise be unsecured.

8 B.R. at 673. This statement has since been validated in a different context in *Farrey v. Sanderfoot*, 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991).

In *Farrey*, the Court held that § 522(f)(1)(A) applies only if a debtor has an interest in property prior to the judicial lien attaching. As part of its analysis, the Court explained that, in enacting § 522(f)(1)(A), Congress limited the longstanding rule permitting all prepetition liens to be enforced against exempt property, by allowing judicial liens obtained by

creditors whose interests would have otherwise been unsecured to be undone. *Id.* at 298–99, 111 S.Ct. 1825. The Court states: "What specific legislative history exists suggests that a principal reason Congress singled out judicial liens was because they are a device commonly used by creditors to defeat the protection bankruptcy law accords exempt property against debts." *Id.* at 297, 111 S.Ct. 1825. The Court then quotes with approval the following passage of legislative history:

> "The first right [§ 522(f)(1) ] allows the debtor to undo the actions of creditors that bring legal action against the debtor shortly before bankruptcy. Bankruptcy exists to provide relief for an overburdened debtor. If a creditor beats the debtor into court, the debtor is nevertheless entitled to his exemptions."

*Id.* at 297–98, 111 S.Ct. 1825 (quoting H.R.Rep. No. 95–595, at 126–27 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6087–6088). This discussion in *Farrey* supports the idea that § 522(f)(1)(A) is limited to judgments obtained on debts that would otherwise have been unsecured on the petition date, not prepetition foreclosure decrees obtained as a result of a default on a pre-existing consensual security interest, such as Armstrong's mortgage.

The debtor argued below that Armstrong's mortgage was not capable of being recorded due to an alleged faulty notarization and, therefore, the Chapter 7 trustee could avoid the security interest created by the mortgage. If the consensual security interest were avoided, the debtor maintained there would be only a judicial lien created by the state court's foreclosure decree. The bankruptcy court correctly rejected this argument, noting that there was no record that the trustee or any other party had commenced or refused to commence an avoidance action against Armstrong. Furthermore, for the reasons discussed above, even if Armstrong's security interest was avoided, § 522(f)(1)(A) would not apply because entry of a foreclosure decree does not create a judicial lien under Oklahoma law.

The debtor argues on appeal that the liens related to Parcels A and B, which were included in the state court's foreclosure decree, cannot apply against Parcel C, his exempt homestead. This is true, and we do not believe that the bankruptcy court held otherwise. The bankruptcy court refused to avoid Armstrong's interest in Parcel C under § 522(f)(1)(A) because it is a security interest, not a judicial lien. The court in no way held that the Creditors' liens related to Parcels A and B should apply to Parcel C.

■ The debtor also claims that the notarization on Armstrong's mortgage on Parcel C was faulty and, therefore, the lien is invalid under Oklahoma law because it could not be recorded. This argument is not capable of review, because it is based on facts that are not part of our appellate record. *See Scott v. Hern,* 216 F.3d 897, 912 (10th Cir.2000). Even on our limited record, however, we are convinced that the bankruptcy court did not err in rejecting it. First, it is undisputed that Armstrong's mortgage was recorded. Second, the statute cited by the debtor in support of this argument states that an instrument shall not be recorded without proper acknowledgment. 16 Okla. Stat. Ann. § 26 (1999). Thus, assuming that the debtor's allegations related to the notary on Armstrong's mortgage are true, Armstrong's inability to record her lien or any error in its actual recording did not render it invalid, but rather prevented its perfection. *See Ussery v. Driver,* 104 Okla. 155, 231 P.

214, 216 (1924) (per curiam); *Hess v. Trigg,* 8 Okla. 286, 57 P. 159, 160 (1899) (imperfect notary does not affect the validity of the agreement between the parties). The alleged problems related to perfection have no bearing on the § 522(f)(1)(A) action raised below.

### III. *Conclusion*

For the reasons stated above, the bankruptcy court's order is hereby AFFIRMED.