In re SUN 'N FUN WATERPARK LLC, doing business as Sun 'N Fun Waterpark, Debtor.

Eastman National Bank, Appellant–Cross–Appellee,

v.

Sun 'N Fun Waterpark LLC, Appellee–Cross–Appellant.

BAP Nos. 08–095, 08–100.
Bankruptcy No. 07–10074.

United States Bankruptcy Appellate Panel of the Tenth Circuit.

July 9, 2009.

25. *Id.* at 1212.

Submitted on the briefs: *

Grace K. Yates of Holmes and Yates, Ponca City, OK, and James Vogt, Oklahoma City, OK, for Appellant–Cross–Appellee.

B. David Sisson, of the Law Offices of B. David Sisson, Norman, OK, for Appellee–Cross–Appellant.

Before BROWN, RASURE, and ROMERO, Bankruptcy Judges.

## OPINION

BROWN, Bankruptcy Judge.

Appellant Eastman National Bank ("Bank") appeals the bankruptcy court's partial disallowance of its secured claim under 11 U.S.C. § 506(b), arguing the Bank's claim for postpetition attorney's fees, costs, and charges should have been allowed. Debtor Sun 'N Fun Waterpark LLC ("Debtor") cross-appeals, arguing the bankruptcy court should not have allowed the Bank's prepetition attorney's fees under § 506(b). Central to this dispute is the question of whether, under Oklahoma law, a secured creditor who obtains a foreclosure decree, but whose collateral has not yet been sold at a sheriff's sale, loses its contractual rights under the mortgage to recover fees and costs associated with its post-foreclosure decree collection efforts. In this case, the bankruptcy court ruled the Bank's mortgage merged into the foreclosure decree and, therefore, the Bank no longer had an agreement entitling it to recover further fees and costs. For the following reasons, we **REVERSE** the decision of the bankruptcy court and **REMAND** for further proceedings.

## I. Background

Debtor is an entity formed by Ron and Danielle Behar to operate a water park in Ponca City, Oklahoma. In mid–2005, the Behars entered into negotiations to purchase the water park from Bill and Betty Rutz (the "Rutzes"). The Bank provided financing for the purchase. The Bank's loan to Debtor was secured by a mortgage on the water park and was guaranteed by the Behars and the Rutzes. Shortly after the purchase closed, disputes arose among the Debtor, the Bank, the Behars and the Rutzes. Debtor failed to make any payments on its loan with the Bank. Litigation ensued in Oklahoma state court.

The state court conducted a five-day trial and on September 18, 2006, entered a judgment in favor of the Bank ("Judgment").[1] In it, the court granted judgment against Debtor and the Behars in the amount of $286,875.71, plus pre-and post-judgment interest.[2] The state court further found the Bank had a valid first lien on the water park by virtue of the mortgage securing the payment of the indebtedness, which included interest, attorney's

---

* The parties did not request oral argument, and after examining the briefs and appellate record, the Court has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. Bankr.P. 8012. The case is therefore ordered submitted without oral argument.

1. Appellant Appx. at 307–13.

2. *Id.* at 309. The Judgment also entered in favor of the Bank and against the Rutzes based on their partial guaranty of Debtor's loan obligation. Debtor initially argued the bankruptcy court should offset the Bank's claim by the amount of the judgment against the Rutzes ($135,000). Debtor withdrew this argument in its Reply Brief and, accordingly, we will not address it here.

fees, and costs. The Judgment provided that if the money judgment was not satisfied, the sheriff was authorized to sell the mortgaged property and distribute the proceeds to pay, in this order, taxes, costs of sale and attorney's fees, the Bank's money judgment, and any other judgment to be rendered in the action. The state court reserved ruling on the amount of attorney's fees, which were "to be determined by application of the parties within ten (10) days of the date of this judgment." [3]

On September 26, 2006, following entry of the Judgment, the Bank filed a Motion to Assess Costs and Attorney Fees with the state court ("Motion to Assess") [4] and scheduled a sheriff's sale of the property. Before the state court ruled on the Motion to Assess and before the sheriff's sale could occur, the Behars filed an individual Chapter 7 petition on November 9, 2006. The Behars' petition listed Debtor as a "dba" and they scheduled the water park as an asset in their individual case. On January 11, 2007, Debtor filed its own Chapter 7 petition. The bankruptcy court later converted Debtor's case to a Chapter 11 proceeding, over the Bank's objection.

The Chapter 11 proceedings have been contentious. The Bank filed a motion for relief from stay to proceed in state court with its Motion to Assess, which the bankruptcy court granted on June 15, 2007.

The bankruptcy court's order stated the stay was lifted to allow the Bank "to pursue its attorneys fees and costs claim filed on September 26, 2006 in the Kay County action and if approved by lower court, [the Bank] may reduce same to judgment." [5] On October 17, 2008, the Oklahoma state court entered a judgment against Debtor granting the Bank's Motion to Assess costs and attorney's fees in the amount of $17,865.60 ("Fee Judgment"). [6] The Fee Judgment notes Debtor failed to appear in opposition to the Motion to Assess.

The Bank filed a secured claim in Debtor's case, which it amended several times. [7] The final version listed the Bank's claim at $375,276.35, which included the Bank's claim for attorney's fees and costs under § 506(b). [8] The Bank's request for attorney's fees and costs included the $17,865.60 awarded by the Fee Judgment, plus postpetition fees and expenses of roughly $32,000. [9] The Bank's claim also included certain out of pocket expenses incurred by the Bank in connection with preserving its collateral, including insurance, repairs, utilities, taxes, winterization costs, and appraisal fees. [10] Debtor objected to the Bank's claim.

The bankruptcy court held an evidentiary hearing on the claim objection on November 5, 2008, and made findings and conclusions on the record. [11] On November 18, 2008, the bankruptcy court entered a

---

3. *Id.* at 310.

4. *Id.* at 344.

5. *Id.* at 346.

6. *Id.* at 345.

7. Appellee Appx. at 254–91.

8. Appellant Appx. at 56. Unless otherwise specified, all references to "Sections" are to Title 11, United States Code.

9. Appellant Appx. at 518; Appellee Appx. at 224. The actual amount of postpetition fees claimed by the Bank is unclear from the record. The Bank's bankruptcy counsel testified the claim included the $17,865 awarded by the state court plus $31,875 in postpetition fees, which totals $49,740. The Bank's proof of claim, filed seven months earlier, estimated fees through April 28, 2008, to be $52,381.11.

10. Appellant Appx. at 58.

11. *Id.* at 264–69.

formal order partially disallowing the Bank's secured claim.[12] Essentially, the bankruptcy court allowed the amount of the Judgment, plus pre- and post-judgment interest, and the amount of the Fee Judgment. The court disallowed all other attorney's fees, costs, and out of pocket expenses stated in the Bank's proof of claim.

## II. Standard of Review

■ We review the factual findings of the bankruptcy court for clear error and its legal conclusions *de novo*.[13] The bankruptcy court's interpretation of § 506(b) is a question of law subject to *de novo* review.[14] The bankruptcy court's conclusions concerning the allowance of attorney's fees, costs and expenses as part of the secured claim are reviewed *de novo* as questions of law.[15]

## III. Discussion

### A. Postpetition Fees and Costs Under § 506(b)

■ The first issue in this appeal is whether postpetition attorney's fees, costs, and out of pocket expenses incurred by the Bank should have been allowed as part of the Bank's secured claim under § 506(b). That section provides:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and *any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.*[16]

The language in § 506(b) can be broken down into four basic requirements for the allowance of attorney's fees, costs, and charges to a secured creditor: (1) the claim must be an allowed secured claim; (2) the creditor holding the claim must be over-secured; (3) the entitlement to fees, costs, or charges must be provided for under the agreement or state statute under which the claim arose; and (4) the fees, costs and charges sought must be reasonable in amount.[17]

In this case, there is no dispute the first two requirements have been met: the Bank has an allowed secured claim and is over-secured. The bankruptcy court essentially concluded the third requirement had not been met and consequently never reached the fourth requirement of reasonableness. The court first noted neither party had suggested a state statute provided for the fees at issue. The court then stated there was no "agreement" for fees because, although the Bank's note and mortgage allowed for attorney's fees, the note and mortgage had merged into the state court Judgment.[18] In support of its decision, the bankruptcy court cited to a Third Circuit case and a Tenth Circuit

---

12. Appellee Appx. at 389–92.

13. *Fowler Bros. v. Young (In re Young)*, 91 F.3d 1367, 1370 (10th Cir.1996).

14. *In re Gledhill*, 164 F.3d 1338, 1340 (10th Cir.1999).

15. *Kittel v. First Union Nat'l Bank (In re Kittel)*, WO–01–094, 2002 WL 924619, at *5 (10th Cir. BAP May 8, 2002).

16. 11 U.S.C. § 506(b) (emphasis added).

17. *See, e.g., In re Astle*, 364 B.R. 735, 741 (Bankr.D.Idaho 2007) (listing requirements); *In re Kord Enters. II*, 139 F.3d 684, 689 (9th Cir.1998) (listing requirements for the pre-BAPCPA version of § 506(b)). The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") made slight changes to the wording of § 506(b).

18. Appellant Appx. at 265–66.

case, both of which involve foreclosure of a mortgage with an attorney's fees provision.[19] Both cases conclude, through slightly different analyses, that a secured creditor cannot rely on an attorney's fees provision in the documents supporting the foreclosed mortgage to recover postpetition fees under § 506(b). It is important to understand, however, the unique factual circumstances of those cases and to recognize that in both cases, a foreclosure sale of the secured creditor's collateral had been completed—which has not occurred in this case.

In the Third Circuit case, *In re A & P Diversified Technologies Realty, Inc.*,[20] the secured creditor initiated foreclosure proceedings prepetition. The debtor filed for bankruptcy before the completion of a foreclosure sale, but the bankruptcy court granted the secured creditor relief from stay to complete the proceeding. Having obtained a final foreclosure judgment and a sale of the property, the secured creditor collected the full amount of its foreclosure judgment from the proceeds of the sale. The secured creditor then filed a proof of claim in the bankruptcy court which included attorney's fees incurred during the bankruptcy case. The secured creditor argued § 506(b) applied and that its claim was based on the "agreement" for fees contained in the original mortgage.

The Third Circuit applied the New Jersey law of merger and concluded the mortgage had merged into the judgment of foreclosure. Under this doctrine, the court explained, "a contract is deemed to merge with the judgment, thereby depriving a plaintiff from being able to assert claims based on the terms and provisions of the contractual instrument."[21] Thus, in the absence of any surviving "agreement" for fees, the Third Circuit concluded the claim should have been disallowed. The court acknowledged an exception to the merger doctrine, however, when a mortgage " 'clearly evidences [an] intent to preserve the effectiveness of that provision post-judgment.' "[22] Since the mortgage before the court contained no language evidencing an intent to preserve a claim for attorney's fees after a final foreclosure judgment had been entered (*i.e.*, an intent that the attorney fee provision of the mortgage would not merge into the judgment), it held the lender was not entitled to postpetition fees under § 506(b).

In the Tenth Circuit case, *In re Gledhill*,[23] the secured creditor had foreclosed prepetition on a gas station owned by the debtors. After the foreclosure sale, which yielded insufficient proceeds to satisfy the debt, the creditor obtained a deficiency judgment. It then recorded its deficiency judgment and sought to enforce it by executing on additional real property owned by the debtors (*i.e.*, property not subject to the creditor's mortgage). Debtors filed bankruptcy before the execution sale occurred. The secured creditor filed a proof of claim in the bankruptcy case for the amount of its deficiency judgment, plus interest and attorney's fees. The Tenth Circuit began its analysis by identifying the "allowed secured claim" at issue.[24] That claim, the Court determined, was

19. *Id.* at 266, 268 (citing *In re A & P Diversified Techs. Realty, Inc.*, 467 F.3d 337 (3rd Cir.2006) and *In re Gledhill*, 164 F.3d 1338 (10th Cir.1999)).

20. *In re A & P Diversified Techs. Realty, Inc.*, 467 F.3d 337 (3rd Cir.2006).

21. *Id.* at 341.

22. *Id.* at 342, *quoting In re Stendardo*, 991 F.2d 1089, 1094 (3rd Cir.1993).

23. *In re Gledhill*, 164 F.3d 1338 (10th Cir. 1999).

24. *Id.* at 1340–41.

based on the deficiency judgment, not the original note and mortgage. The Court found those agreements to be "irrelevant" to the secured creditor's claim because the foreclosure sale had concluded and sale proceeds applied, thus "exhausting" the creditor's security interest arising under the note and mortgage.[25] Under Utah law, when the deficiency judgment was entered, a judgment lien arose which was enforceable against all real property owned by the debtors. It was the judgment lien, not the note and mortgage, that created the "allowed secured claim" at issue. The Tenth Circuit did not rely on the doctrine of merger.

The Tenth Circuit next considered whether § 506(b) allows creditors holding oversecured *nonconsensual* claims to recover postpetition fees. Based on the Supreme Court's decision in *United States v. Ron Pair Enterprises Inc.*,[26] the Tenth Circuit concluded only creditors whose claims are secured by *consensual* liens may recover fees, costs and other charges under § 506(b).[27] The court held the secured creditor in *Gledhill* did not have a consensual lien because its claim was no longer based on the original mortgage, but on a judgment lien arising from the entry of the deficiency judgment. This type of lien arose by operation of law, and was not consensual. The Tenth Circuit noted the only property the debtors had pledged as collateral in connection with a consensual agreement with the creditor was the gas station, which had been sold prepetition. Upon the sale of the gas station, the secured creditor "received, for better or worse, the benefit of its bargain" under the mortgage.[28]

The *Gledhill* case remains binding precedent in this Circuit. However, the decision pre-dates passage of BAPCPA, which slightly altered the language of § 506(b). The old version of § 506(b) allowed for collection of fees if "provided for under the agreement under which such claim arose."[29] BAPCPA added the phrase "or State statute" to § 506(b), so the statute now authorizes collection fees if "provided for under the agreement *or State statute* under which such claim arose."[30]

There have been relatively few decisions interpreting the effect of BAPCPA's change to § 506(b). The few that have been published indicate an oversecured lien creditor relying on the new "State statute" provision would be entitled to § 506(b) fees "only if the State statute under which the claim itself arose provides for recovery of fees."[31] To the extent a secured creditor could demonstrate its secured claim arose under a state statute, it is possible such a claim could be considered "nonconsensual" but still allowable under § 506(b).[32] Thus, the dichotomy of

25. *Id.*

26. *United States v. Ron Pair Enters. Inc.*, 489 U.S. 235, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

27. *In re Gledhill* 164 F.3d 1338.

28. *Id.* at 1342.

29. 11 U.S.C. § 506(b) (2004).

30. 11 U.S.C. § 506(b) (as of October 17, 2005).

31. *In re Astle*, 364 B.R. 735, 741 (Bankr.D.Idaho 2007); *see also In re Davis*, 352 B.R. 651, 655–56 (Bankr.N.D.Tex.2006) (finding oversecured creditor's tax claim arose under the Texas Tax Code and creditor was therefore allowed reasonable attorney's fees to the extent the Tax Code provided for their recovery).

32. *Cf. In re EnRe LP*, 457 F.3d 493, 494–95 (5th Cir.2006) (holder of allowed secured claim arising from a statutory lien, rather than a consensual security agreement, may not recover attorney's fees and costs under pre-BAPCPA version of § 506(b)).

consensual versus nonconsensual claims described under *Gledhill* is perhaps less important post-BAPCPA. For our purposes, however, the changes to § 506(b) have little import because the Bank does not base its claim on a state statute but rather on a consensual mortgage. Thus, *Gledhill's* analysis of whether the allowed secured claim at issue arose from the mortgage or the deficiency judgment therefore remains instructive.[33]

## B. Applying the Tenth Circuit Approach

■ Following the *Gledhill* analysis, this Court must first identify the "allowed secured claim" at issue. In this case, the Bank initiated foreclosure proceedings and obtained the Judgment liquidating the amount owed and permitting a sheriff's sale if the Judgment was not paid. In contrast to *Gledhill,* the sheriff's sale was scheduled but never conducted, due to the intervening bankruptcy and the automatic stay. This distinction is critical for the purposes of applying the doctrine of merger recognized by Oklahoma law.

■■ Under Oklahoma law, foreclosure of a mortgage is a multi-step process. The initial foreclosure decree renders judgment for the amount due to the plaintiff, establishes the validity and priority of other liens or claims against the mortgaged property, authorizes the sheriff to sell the property, and directs how the proceeds of the sale shall be distributed.[34] If the secured creditor's judgment is not satisfied from the proceeds of the sheriff's sale, it may obtain a deficiency judgment for the balance.[35] Upon the recordation of the deficiency judgment in the county land records, a judgment lien attaches to all real property of the judgment debtor located in that county.[36] Importantly, "a decree of foreclosure determines only that there is a valid mortgage lien which the mortgagee is entitled to enforce through a sale."[37] "A mortgage lien on real estate *is not merged* into a decree of foreclosure, nor is it extinguished by the mere rendition of a decree of foreclosure."[38] The mortgage lien is extinguished "only by a sale."[39]

Thus, in this case, the state court foreclosure Judgment did not extinguish the Bank's mortgage lien. The lien can only be extinguished by a sale and application of the proceeds to the Judgment, which has not yet occurred. Unlike the secured creditor in *Gledhill,* the Bank is not relying on a deficiency judgment lien, enforceable on all property of the debtor. The Bank has not yet sold the water park nor has it received "the benefit of its bargain," as had the creditor in *Gledhill.* Since the Bank's claim under the mortgage has not been satisfied with the proceeds of the sale of the property, the mortgage lien has not been "exhausted" nor is it "irrelevant" as it was in *Gledhill.* Because the mortgage lien still exists, the Bank's "allowed se-

33. *See In re Astle,* 364 B.R. at 740 n. 7 (concluding judicial construction of § 506(b) based on *Ron Pair,* and the limitation of § 506(b) to only those situations where fees were authorized "under the agreement under which such claim arose," remain viable post-BAPCPA).

34. *See* Okla. Stat. Ann. tit. 12 § 686 (2000).

35. *Id.*

36. Okla. Stat. Ann. tit. 12 § 706 (2000).

37. *Bank of the Panhandle v. Hill,* 965 P.2d 413, 416 (Okla.Civ.App.1998).

38. *Id.* (emphasis added).

39. *Id.; see also* Okla. Stat. Ann. tit. 42 § 22 (2001) ("The sale of any property on which there is a lien, in satisfaction of the claim secured thereby ... extinguishes the lien thereon.").

cured claim" arises under an agreement—the mortgage.

■ Having determined the basis of the allowed secured claim at issue, the next step under *Gledhill* is to determine if the claim is consensual. We believe it is. As discussed above, Oklahoma law dictates that the Judgment did not extinguish the Bank's mortgage lien. A mortgage lien is a consensual lien since it is created by agreement.[40]

This Court reached a similar conclusion when examining an Oklahoma state foreclosure judgment in the context of § 522(f). In *In re Nichols,* a creditor obtained a default judgment of foreclosure in an Oklahoma state court.[41] Before the property could be sold at a sheriff's sale, the debtor filed bankruptcy. The debtor moved to avoid the creditor's lien pursuant to § 522(f), arguing the foreclosure judgment was an avoidable judicial lien impairing his homestead exemption.[42] The bankruptcy court denied the debtor's motion and this Court affirmed. This Court first reviewed the difference between a judicial lien and a consensual lien, and then concluded the security interest "was not transmuted into a judicial lien when the Creditors obtained a foreclosure decree from the state court." [43]

Indeed, it is well-settled under Oklahoma law that a mortgage lien is neither merged into a foreclosure decree nor

extinguished by a foreclosure decree, and that a foreclosure decree in no way creates a lien, but rather is a means of enforcing the lien created by contract. A mortgage lien is extinguished only by foreclosure sale. 42 Okla. Stat. Ann. § 22 (1990). Thus, when the state court entered its foreclosure decree, [the creditor]'s consensual security interest continued to exist, and a new "judicial lien" was not created. Furthermore, on the debtor's petition date, [creditor] had a security interest in [the real estate] under Oklahoma law because the foreclosure sale, which would have extinguished her consensual lien, had not been confirmed and was stayed pursuant to § 362(a). Based on this analysis, there is no judicial lien to which § 522(f)(1)(A) applies.[44]

Similarly in this case, the entry of the Judgment by an Oklahoma state court did not transform the Bank's mortgage lien into a judicial lien. Because the Bank's allowed secured claim is based on its mortgage lien, the Bank is entitled to "any reasonable fees, costs, or charges provided for under the agreement" pursuant to § 506(b).[45]

## C. Merger

■ Although the Tenth Circuit's decision in *Gledhill* did not apply merger, we will nonetheless address it because the bankruptcy court relied on it below. Okla-

---

**40.** *See In re Vaughan,* 311 B.R. 573, 583 (10th Cir. BAP 2004) ("A security interest, or consensual lien, is a 'lien created by an agreement/'").

**41.** *In re Nichols,* 265 B.R. 831 (10th Cir. BAP2001).

**42.** In part, § 522(f)(1)(A) provides a debtor "may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under sub-

section (b) of this section, if such lien is—(A) a judicial lien[.]"

**43.** *Nichols,* 265 B.R. at 835.

**44.** *Id.* (internal citations omitted).

**45.** Based on this ruling we need not reach the Bank's other arguments on appeal concerning application of equitable estoppel and the effect, if any, of the Bank's post-judgment filing of a reformed mortgage to correct clerical errors.

homa courts recognize the doctrine of merger generally. In *Johnson v. State ex rel. Department of Public Safety,* the Oklahoma Supreme Court described the doctrine as follows:

> The doctrine of merger is a common law principle in which a cause of action is merged into a judgment, extinguishing the underlying cause of action. Under the general rule, the judgment replaces the old debt which ceases to exist, and extinguishes all the remedial rights which accompany the underlying claim. Under the rule of merger, the judgment does not annihilate the debt and the essential nature of the debt remains intact.... The doctrine of merger is part of the law of res judicata. The doctrine of merger is generally utilized to prevent a second suit from being brought on a claim after judgment has been entered on the claim. The purpose of the rule of merger is to promote justice. The rule of merger is not without exception and will be extended only so far as necessary to further its purpose. The rule of merger will not be applied when to do so will create unjust or inequitable results. When a cause of action is extinguished because it is merged into a judgment, the advantages which attached to the original claim may be preserved. For example, a lien is not extinguished merely because a creditor obtains a judgment against a debtor.

Likewise, a creditor does not forfeit its priority in bankruptcy by obtaining a judgment.[46]

■■■■ The *Johnson* case, however, is not a foreclosure case and does not address the merger of a mortgage. The more applicable case law here is the foreclosure case law discussed above, which holds a "mortgage *does not merge* with the decree of foreclosure .... [t]he mortgage itself is not extinguished until the property which secures it is sold." [47] Because the Bank's collateral had not yet been sold at sheriff's sale, there has been no merger. Thus, the Bank's contractual right to fees, costs, and out of pocket expenses under the mortgage was not extinguished, and the Bank is entitled to seek allowance of those fees, costs, and expenses as a part of its secured claim under § 506(b).[48]

■■■ Even if the doctrine of merger did apply, the exception to the doctrine of merger acknowledged by the Third Circuit would be applicable. For the exception to be applicable, there must be clear evidence of an intent to preserve the effectiveness of the attorney's fee and expense provision post-judgment.[49] The terms of the Bank's mortgage are explicit enough to invoke this exception. The mortgage provides:

> **Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such

---

**46.** *Johnson v. State ex rel. Dep't of Pub. Safety,* 2 P.3d 334, 337 (Okla.2000) (citations omitted).

**47.** *Bank of the Panhandle,* 965 P.2d at 417 (emphasis added).

**48.** *See In re Schwartz,* 77 B.R. 177, 180–81 (Bankr.S.D.Ohio 1987) (although creditor obtained foreclosure judgment, no sale occurred so that contractual rights under the mortgage, including right to add certain expenses and attorney's fees to indebtedness secured, were

not extinguished); *In re Clark Grind & Polish, Inc.,* 137 B.R. 172, 175 (Bankr.W.D.Pa.1992) (although once foreclosure judgment was entered on note, any right to attorney's fees and costs under note was extinguished, creditor's lien rights under mortgage and asset purchase agreement are not extinguished until creditor receives payment).

**49.** *In re A & P Diversified Techs. Realty, Inc.,* 467 F.3d 337, 342 (3rd Cir.2006).

sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, **all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its right shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid.** Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, **Lender's attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services,** the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.[50]

. . .

**Survival of Representations and Warranties:** All representations, warranties, and agreements made by Grantor in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature, and shall remain in full force and effect until such time as Grantor's Indebtedness shall be paid in full.[51]

The specific mention that "all reasonable expenses Lender incurs that in Lender's opinion are necessary *at any time* for the protection of its interest or the enforcement of its right," "fees and expenses for bankruptcy," and "any anticipated post-judgment collections services" will be added to the debt secured by the mortgage is evidence of an intent to preserve the effectiveness of the fee and expense provision following the entry of a foreclosure judgment.

In contrast, the attorney's fee provision which the Third Circuit held did not evidence such an intent in *In re A & P Diversified Technologies Realty, Inc.* included only a general provision that "the Mortgagor agrees that it will pay to the Mortgagee, on demand, the reasonable fee of such attorneys, together with all other costs and expenses incurred by the Mortgagee, and that all of said costs and expenses shall be secured by the Mortgage."[52] The *A & P Diversified* mortgage also had a waiver provision that stated "[t]he Mortgagor . . . waives and releases, to the fullest extent it may lawfully do so, all benefit of any present or future moratorium law or any other present or future law, regulation or judicial decisions . . . [which] conflict[ ] with any provision herein or in the other Loan Documents."[53] The Third Circuit held "[t]he fact that the debtor generally waived certain present or future laws for its benefit does not clearly indicate that the debtor's obligation to pay attorneys' fees continued post-judgment."[54] The Bank's mortgage in this case, however, does indicate Debtor agreed to pay the Bank's legal fees and

---

50. Appellant Br. at 12; Appellant Appx. at 285 & 426 (emphasis added and omitted).

51. Appellant Br. at 13; Appellant Appx. at 282 & 423.

52. *A & P Diversified Techs. Realty, Inc.,* 467 F.3d at 339.

53. *Id.*

54. *Id.* at 343.

reimburse its out of pocket expenses incurred post-judgment and in bankruptcy proceedings.

### D. Prepetition Fees and the Applicability of Fed. R. Bankr.P.2016

In its cross-appeal, Debtor argues the bankruptcy court's allowance of $17,865.60 in attorney's fees was erroneous because the Bank did not demonstrate the reasonableness of these fees and failed to submit an application under Federal Rule of Bankruptcy Procedure 2016(a). The Bank argues in response that Rule 2016 is inapplicable and that the state court Fee Judgment should be given preclusive effect. We agree.

■ Rule 2016 requires an entity seeking interim or final compensation for services or reimbursement of necessary expenses from the estate to file an application setting forth a detailed statement of services rendered and amounts requested.[55] This Court has previously determined Rule 2016 is inapplicable where a secured creditor is seeking recovery of prepetition fees.[56] In the case of *In re Kittel,* we noted "[w]ith respect to the pre-petition fees, the Bank is not required to comply with Rule 2016 because it is not seeking compensation for services rendered during the bankruptcy case or for services rendered to the bankruptcy estate."[57] Here, the parties do not dispute the $17,865 Fee Judgment was solely for prepetition attorney's fees and costs.[58] Accordingly, Rule 2016 is inapplicable to that portion of the Bank's claim.[59]

■ We also decline Debtor's invitation to engage in a review of the state court Fee Judgment. Again, this Court's decision in *Kittel* is instructive. Like the Bank in this case, the secured creditor in *Kittel* obtained a prepetition foreclosure judgment in Oklahoma state court, but was prevented from completing a sheriff's sale due to the debtor's bankruptcy filing.[60] The property was eventually sold postpetition. The secured creditor's state court judgment in *Kittel* specifically awarded "expenses and attorney's fees to be incurred in any bankruptcy instituted by any party and all expenses, costs, and attorney's fees of execution and sale."[61] The secured creditor filed a proof of claim that included pre- and postpetition attorney's fees.[62] The bankruptcy court allowed the secured creditor's claim, including pre- and postpetition fees.

---

**55.** In relevant part, Rule 2016(a) provides: "An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested.... The requirements of this subdivision shall apply to an application for compensation for services rendered by an attorney or accountant even though the application is filed by a creditor or other entity[.]"

**56.** *Kittel v. First Union Nat'l Bank (In re Kittel),* WO–01–094, 2002 WL 924619, at *7 (10th Cir. BAP May 8, 2002).

**57.** *Id.*

**58.** The appellate record does not contain a detailed accounting of the $17,865. The Bank represents in its brief that the $17,865 was purely for prepetition fees and costs. Debtor concedes in its brief that the Bank "did not seek to include its post-judgment attorney fees in [the Fee Judgment]...." Appellee Br. at 7.

**59.** Debtor has not argued, and we specifically do not address, whether Rule 2016 is applicable to the Bank's request for postpetition fees, costs and charges under § 506(b).

**60.** *Kittel* was a Chapter 13 case.

**61.** *Id.*

**62.** *In re Kittel,* 2002 WL 924619, at *2.

On appeal, this Court affirmed the award of prepetition fees, concluding that the state court foreclosure judgment had to be given full faith and credit.[63] Under Oklahoma law, the foreclosure judgment had preclusive effect.[64] Thus, the bankruptcy court "rightly concluded that the state court's determinations with respect to attorney's fees were binding upon it." [65] The Court also rejected the debtor's arguments under § 506(b), concluding the provision has "no relevance to the allowance of prepetition fees." [66]

The same principles apply here. The Fee Judgment is entitled to full faith and credit. The state court's determination with respect to prepetition attorney's fees were binding on the bankruptcy court and that court correctly included those fees in the Bank's allowed claim without additional review.

## IV. Conclusion

For the reasons stated above, the order of the bankruptcy court is REVERSED and REMANDED for further proceedings in accordance with this opinion, including a determination as to the amount and reasonableness of the Bank's postpetition fees, costs, and out of pocket expenses, including interest thereon.

---

63. *Id.* at *6. The Court declined to address the bankruptcy court's award of postpetition fees, since the debtor's Chapter 13 plan would not be feasible even if the postpetition fees were disallowed. *Id.* at *7.

64. *Id.*

65. *Id.*

66. *Id.* at *7. *See also In re Gledhill,* 164 F.3d at 1340 (noting an oversecured creditor is entitled to fees accruing prepetition since a claim is measured as of the petition date under § 502(b), but "[i]nterest, fees, costs, and charges that accrue *after* the petition has been filed, or postpetition, are permitted only if authorized under 11 U.S.C. § 506(b)").